## R. S. WILLIS v. E. E. SMITH.

### No. 2297.

1. **Mortgage—Equity of Redemption—Estoppel.**—Smith claimed title to the Talley league of land under an execution sale made September, 1881. Willis claimed under a decree and foreclosure sale under a mortgage made by Epperson, the common source of title, for half interest in the league (the mortgage conveyed a half interest), decree being of May, 1880. Willis also claimed under a sale under a decree against Epperson foreclosing the vendor's lien for five-sixths of the tract. The sales under which Willis claimed were made after Smith's purchase. The decree foreclosing the vendor's lien recited that Epperson (who bought jointly with one Wright) had paid one-sixth of the purchase money and thereby had discharged the lien to that extent. *Held:*

1. The court erred in refusing instructions as to the legal effect of the mortgage conveying one-half interest in the land with the decree enforcing it, and of the recitals in the decree foreclosing the vendor's lien upon five-sixths of the land as an estoppel.

2. That the plaintiff in buying the equity of redemption took only what Epperson or his estate had—the right to redeem.

3. That Smith was estopped by the recitals in his title affecting the Epperson title, which he held.

2. **Fraud—Evidence—Practice.**—In a suit for recovery of land the plaintiff by pleading and evidence attacked the title of the defendant for fraud in certain judicial sales under which he held. The plaintiff introduced in evidence a mortgage made by executors, defendants in the executions under whom both plaintiff and defendant claimed. In rebuttal defendant offered the mortgage, not as basis of title but to rebut the charge of fraud. *Held,* that the exclusion for such purpose was error; the mortgage having been read by one party for any purpose was properly testimony in the case for whatever effect the jury might give it upon the issue of fraud.

APPEAL from Brazoria. Tried below before Hon. W. H. Burkhart.

November 6, 1883, Smith, the appellee, brought suit against Willis, the appellant, for the David Talley league of land in Brazoria County. Several amendments were filed, and the pleadings upon the trial, June 1886, were as follows:

1. Petition with ordinary allegations in trespass to try title.

2. In the alternative if plaintiff is not entitled to the land and rents, the petition alleges that the plaintiff then pleads to the equity side of the court, and alleges in substance that the execution sales under which defendant claims the land are on decrees in favor of Campbell, Ward, and Dixon, respectively, and all three of said decrees were rendered by the District Court of Marion County against the independent executors of B. H. Epperson, deceased, and said sales were all three fraudulent and the deeds thereunder should be canceled. That the land was worth $80,000, and defendant paid no consideration therefor, and only bid $2000 and $100 and $200 respectively at said sale, and defendant was owner of the three judgments and the bids were only credited thereon. That the land did not bring value because defendants had prior to said sale unlawfully taken possession of the land and claimed to own it under a pretended sale under a deed of trust pretended to have been executed by the execu-

tors of B. H. Epperson, deceased, to secure $20,000 to defendant's firm, P. J. Willis & Bro., and said deed of trust was supposed to be a valid and legal encumbrance on said land, and the sale thereunder was generally believed to have been a valid sale till same was declared null and void by the Supreme Court in this case.

That the acts of the defendant and his being wealthy and therefore a formidable antagonist in litigation did in fact deter all others from bidding at said sale. That the sale under the Ward judgment was on an execution for its full amount, whereas there should have been a credit on it for $1200, and the sale under the Campbell decree was postponed by defendant to await the levy of the Ward execution to accumulate encumbrances and deter bidders, and defendant bid and bought under the Ward execution sale in the name and through Ward's attorney, one Crawford. That Ward's judgment was void because entered less than twelve months after probate of Epperson's will, and the executors waived the time in collusion with Ward and in fraud of plaintiff. That the land or five-sixths of it was at the time of the sale and is now of value sufficient to pay the Campbell, Ward, and Dixon judgments if exposed to fair sale; but it was not fairly sold, as before set out. That when defendant took the land he also took personal property thereon of the value of $20,000, and never accounted to Epperson's executors or any one else therefor. That the land was partnership property of Epperson and one Wright when the cause of action on which the Campbell, Dixon, and Ward judgments accrued, and Epperson bought out Wright and promised to pay firm debts, one of which was plaintiff's debt and under judgment on which plaintiff bought the land; and plaintiff claims there was a vendor's lien by reason of this agreement to pay the firm debt and that it enures to the benefit of plaintiff as one of the creditors of the firm, and that the Ward and Dixon debts were individual debts of Epperson and plaintiff had preference over them out of the undivided one-half of the land Wright sold Epperson.

That if he cannot recover on his legal title that he be adjudged to be the holder of the equity of redemption, and that the sale under the Campbell, Ward, and Dixon decrees be adjudged fraudulent and deeds canceled, and if the defendant has any right to equities prior to plaintiff's title that plaintiff be permitted to pay same and take the land; and if he fail to pay in a reasonable time that the land be sold and the proceeds applied to plaintiff and defendant after charging defendant with the value of the personal property he got from Epperson's estate as rent of the land. Plaintiff prays that he be permitted to make appropriation of the proceeds of sale and apply them, first to the Ward judgment if it is a lien, and second to the Dixon judgment, and third to the Campbell.

The defendant answered not guilty, general denial, and estoppel by terms of Dixon's lien.

On the trial the plaintiff introduced evidence to show that he got a judgement for $1283 in the District Court of Marion County against the independent executors of the estate of B. H. Epperson, deceased, and bought the land in controversy under execution thereon in September, 1881. Defendant introduced evidence to show that he bought the undivided five-sixths of the land at sale under vendor's lien decree of Campbell et al. against the executors of Epperson's estate, rendered before plaintiff's levy, and the sale made thereunder after September, 1881; that he bought an undivided half interest in the land at foreclosure sale of that interest on a mortgage given by Epperson to Sallie Dixon, the sale being in May, 1882, under a decree against Epperson's executors, rendered May, 1880.

Defendant also offered evidence to show that he purchased November 1, 1881, all the land under a judgment in favor of one Ward against the executors of Epperson's estate, recorded by abstract in Brazoria County, before plaintiff's levy and sale under execution. The court excluded the abstract of judgment on the ground that it was not duly recorded. Defendant offered evidence to show his purchase of the land prior to plaintiff's judgment under deed of trust sale. The court excluded this deed of trust on the ground that Epperson's executors had no power to give it. The plaintiff alleged and the evidence showed defendant was in possession of the land and cultivating and claiming title thereto, and owning the said Campbell and Dixon decree for foreclosure sale of undivided five-sixths and for an undivided one-half before plaintiff's levy.

The court held there was no evidence to show fraud and refused to submit an issue thereon to the jury. Defendant claimed there was evidence tending to show there was no sale consummated under plaintiff's execution, and the court submitted an issue to the jury on this point. The court charged that defendant's title to an undivided five-sixths of the land was superior to plaintiff's, and that defendant's title under decree of foreclosure on an undivided one-half was better than plaintiff's, but held that the deed of trust on which this decree was based does not contain sufficient covenants of warrranty to pass an after-acquired interest.

The court further held and charged that on the face of the papers Epperson acquired an undivided one-twelfth interest in the land after he executed deed of trust for the undivided one-half, and that plaintiff is owner of this one-twelfth and improvements, and entitled·to the rents if plaintiff complied with the terms of the sale under his execution.

Verdict for plaintiff for the undivided one-twelfth of the land and .$2000 as rent therefor.

Motion for new trial by defendant was overruled and appeal was perfected.

This is the second appeal. See 66 Texas, 31, where is a full statement. The opinion supplies the additional facts.

*Geo. E. Mann* and *E. J. Wilson,* for appellant.— 1. The court charged that the effect of the mortgage by Epperson of the undivided one-half of the land and subsequent sale by Wright to Epperson of this partnership interest, as matter of law, left an undivided one-twelfth of the land free from the lien of the Dixon mortgage. Irvine v. Irvine, 9 Wall., 625, 626; Black v. Epperson, 40 Texas, 62.

2. Plaintiff as execution purchaser under Epperson is estopped from claiming that the undivided one-sixth of the land owned by Epperson when the Dixon mortgage was forclosed did not all pass by the sale under the mortgage. Dixon v. Colgrove, 100 U. S., 580, 582, 583; Perin v. Perin, 62 Texas, 479, 480; Van Rannselear v. Kearney, 11 How., 323 to 326; Kimbro v. Hamilton, 28 Texas, 561; Box v. Lawrence, 14 Texas, 556, 557; Titus v. Johnson, 50 Texas, 242; 1 Greenl. Ev., sec. 57, p. 551; Parker v. Campbell, 21 Texas, 763; Carver v. Jackson, 4 Pet., 86.

3. The court should have charged that the legal effect of the sales under the Campbell and the Dixon decrees was to vest title to the whole of the land in the defendant. Rev. Stats., p. 718, sec. 3, and p. 458, art. 3155; Butler v. Dunagen, 19 Texas, 565; Monroe v. Arledge, 23 Texas, 480; Riddle v. Bush, 27 Texas, 677; Willis v. Smith, 66 Texas, 31.

4. Smith being privy by purchase of the interest of Epperson's estate, the equity of redemption subject to the Campbell decree foreclosing vendor's liens on the undivided five-sixths of the land, and to the Dixon decree foreclosing deed of trust on the undivided half interest in the land, and plaintiff having failed to redeem but allowed his equity of redemption to be cut off by sales under which defendant bought, plaintiff is estopped from claiming any part of the land and from showing that there was not a half interest sold under the Dixon lien and decree. Fisher v. Foote, 25 Texas Supp., 311; Cavanaugh v. Peterson, 47 Texas, 207, 208.

5. The court erred in ruling out the deed of trust from Epperson's executors to Farley, trustee, and deed under it to Willis, offered by defendant, in that said instruments show how the defendant came in possession of personal property, which possession plaintiff had by pleading and evidence attacked as fraudulent.

*Geo. W. & F. J. Duff,* for appellee. — 1. It being shown that one-sixth of the purchase money had been paid, and there being no proof whatever as to the time 'of such payment or as to the time when it was due, the presumption is that it was paid at the time of the purchase. Rhode v. Alley, 27 Texas, 444; Johnston v. Josey, 34 Texas, 534.

2. If Epperson paid the one-sixth after he bought out Wright it was simply so far carrying out his obligation to Wright to pay the firm debts, and the firm creditors are entitled to the benefit.

3. The questions of equitable rights enuring to the benefit of Dixon under the terms of her mortgage could be presented only in the case to

foreclose her mortgage, and that mortgage having been sued on and foreclosed in a suit wherein Dixon was plaintiff and B. H. Epperson's executors were defendants, in the District Court of Marion County, it must be conclusively presumed while that judgment stands in force, as between the parties thereto and those claiming under them, that all rights, legal and equitable, to which Dixon was entitled under said mortgage were adjudicated in said judgment. The appellant in this suit deriving his title by purchase under said judgment and order of sale thereupon issued is concluded and limited by the terms of said judgment and order of sale as to the character and quantity of his purchase thereunder, and can not in this case and under his pleadings herein go back of that judgment to assert equities in the mortgage which are not established by the judgment foreclosing the mortgage. Lee v. Kingsbury, 13 Texas, 70; Read v. Allen, 56 Texas, 182.

4. The Dixon deed of trust being given when the land was already encumbered for at least five-sixths if not the whole of the purchase money, which lien was on record and therefore in law known to Dixon, must be held to be and presumed to have been by the parties thereto intended to be a second lien, subordinate to the first; and the fact that the first lien may have exhausted the fund to such an extent as to leave nothing for the Dixon lien could not authorize that lien to be construed to cover any interest in the land not embraced in the terms and intents of the deed of trust. As to such other interest, whether owned by Epperson at the time or acquired since the execution of the deed of trust, Dixon would stand upon equal ground with other creditors without liens. Willis v. Smith, 65 Texas, 656; Haldeman v. Chambers, 19 Texas, 45; Swisher v. Grumbles, 18 Texas, 177; Nichols v. Stewart, 15 Texas, 232.

5. Article 557, Revised Statutes, relative to implied covenants of warranty implied from the use of the words "grant" and "convey," can not be made to do the service required of it by the seventh and eighth assignments of error and fourth proposition, because that article limits its own operation to "conveyances by which an estate of inheritance or fee simple is to be passed." But if the statute was not so restricted the Dixon mortgage by its own terms limits its own operation expressly to an undivided one-half of the land and it can not be given a more extended operation without actual violation of its terms, and this is true even if Epperson had been owner of the entire league when the mortgage was executed. Willis v. Smith, 65 Texas, 656; Art. 557, Rev. Stats.

6. This article of the Revised Statutes had not been enacted at the date of the deed of trust to Sallie Dixon, and is not applicable.

7. The court below did not err in refusing to charge that the legal effect of the sales under the Campbell and Dixon decrees was to vest title to the whole of the land in defendant.

8. The court did not err in ruling out the deed of trust to Farley from

E. S. Epperson, for such instrument does not show how plaintiff came in. possession of the personal property, as there was no evidence offered that; the trust was ever executed by Farley.   In Lawson's deed to P. J. Willis; & Bro., covering the land and personal property, it appears that he pretended to act under this deed of trust as a substitute trustee, but there was no evidence whatever of his substitution.   Cheveral v. McCormick, 58 Texas, 445; Willis v. Smith, 65 Texas, 656; Blanton v. Mayes, 58 Texas, 422; Story on Agency, secs. 21, 62; Jones on Mort., sec. 120; Reese v. Medlock, 27 Texas, 123.

ACKER, PRESIDING JUDGE.—B. H. Epperson and A. U. Wright owned the Talley league on which the Darrington plantation is situated, having purchased it from the six heirs of Blackwell.   For the purchase money they executed and delivered their six promissory notes each secured by lien retained against an undivided one-sixth of the land.   In February, 1878, Epperson executed a mortgage to Sallie Dixon containing the following clauses:   "Do hereby bargain, sell, and convey unto the said Sallie Dixon, her heirs and assigns forever, one league of land surveyed in the name of David Talley, situated in Brazoria County upon which is what is known as the Darrington plantation.   *   *   *   It is understood that my interest in said land is the undivided one-half thereof, and this instrument is intended only to cover that."   This mortgage was recorded in Brazoria County in September, 1878.

On July 31, 1878, Wright conveyed his half interest in the land to Epperson, who assumed payment of all debts against the firm of Epperson & Wright.   This deed was recorded in Brazoria County February 6, 1880.   B. H. Epperson died leaving a will appointing J. P. Russell and R. B. Epperson general independent executors and E. S. Epperson special independent executor.   The will was admitted to probate October 2, 1878, and the executors qualified.

On February 20, 1879, Epperson's executors executed to P. J. Willis & Bro. a deed of trust on the league of land to secure the payment of notes held by Willis & Bro. amounting to about $20,000.   Lawson, the trustee named in this deed, sold the land under the deed of trust on the 4th day of May, 1880, to P. J. Willis & Bro., and they took possession immediately thereafter.   P. J. Willis & Bro. conveyed the land to appellant, and he was in possession at the time the execution under which the appellee claims was levied on the land.

On May 20, 1880, the Dixon mortgage was foreclosed on an undivided one-half of the league by decree of the District Court of Marion County. On December 1, 1880, appellee recovered judgment in the District Court of Marion County against the executors of Epperson and against A. U. Wright as surviving partner for $1283.33.   On May 24, 1881, the heirs of Blackwell obtained judgment against the executors of Epperson upon

the purchase money notes executed by Epperson and Wright and foreclosing the liens upon the undivided five-sixths of the land. This judgment recited that the notes given by Epperson and Wright for the other one-sixth had been paid off by Epperson and the vendor's lien thereon discharged.

On June 21, 1881, execution was issued against the executors of Epperson on the judgment in favor of appellee, under which the entire league was sold in September, 1881, and bought in for appellee by his attorney, who afterwards, on May 5, 1883, conveyed the land by quit claim deed to appellee. On November 1, 1881, five-sixths undivided interest in the league was sold under an order of sale issued on the decree of foreclosure in favor of the Blackwell heirs. Appellant purchased at this sale.

In April, 1882, an undivided half interest in the league was sold under an order of sale issued on the decree of foreclosure in favor of Dixon, and appellant purchased at this sale.

On a former trial in the court below there was verdict and judgment for appellee for one-sixth of the land and for an annual rent of $833.33 from the date of his purchase. Willis appealed and the judgment was reversed and the cause remanded. 66 Texas, 43.

On the last trial there was verdict and judgment for appellee for an undivided one-twelfth of the land and $2000 as rent therefor, from which judgment this appeal is prosecuted.

It is contended that the court erred in refusing to give special charges requested by appellant to the effect—

"That the decree of foreclosure in favor of the Blackwell heirs recites that Epperson paid the one-sixth of the purchase money which freed the undivided one-sixth of the land from vendor's lien, and the plaintiff can not recover the one-twelfth he claims unless he shows that Epperson paid the one-sixth before he bought from Wright, and having failed so to prove your verdict must be for the defendant.

"That the recitation in the judgment of foreclosure in favor of the Blackwell heirs admits that the note of Wright and Epperson for the undivided one-sixth which was free from lien became free because Epperson paid the note. This recitation binds the plaintiff (Smith) who claims under Epperson by subsequent purchase, and under this admission defendant purchasing under the liens in favor of the Blackwell heirs and Dixon gets title to all the land.

"That the Dixon mortgage, by conveying title to the whole league of land and then reciting the interest to be an undivided one-half and by the use of the word convey, makes an estoppel, which estoppel binds the plaintiff (Smith) as subsequent purchaser under Epperson from claiming that Epperson did not have an unencumbered half interest with which to satisfy the Dixon lien.

"That the purchase by defendant of five-sixths undivided interest in

the land under the judgment of foreclosure in favor of the Blackwell heirs, and the purchase by defendant of the undivided one-half interest under the Dixon judgment, gave defendant the whole right, title, and interest of the estate of B. H. Epperson in the land, in that the said judgments show that Epperson and Wright bought the whole of the land and gave vendor's liens thereon for the purchase money, and that Epperson afterwards gave the Dixon mortgage on an undivided one-half of the whole, and the judgment in favor of the Blackwell heirs shows that B. H. Epperson in his lifetime paid off the vendor's lien on an undivided one-sixth, and the orders of sale on said respective judgments and the sales and deeds thereunder show that defendant R. S. Willis bought the undivided five-sixths under the decree in favor of the Blackwell heirs and then bought all of Dixon's lien interest of an undivided one-half of the whole as far as the estate of Epperson had land left to meet his contract with Dixon for the undivided one-half.

"That the defendant had acquired an undivided five-sixths of the land under the decree in favor of the Blackwell heirs and an undivided half interest under the Dixon decree, and that at the date of the levy of the execution and sale thereunder under which plaintiff claims Epperson's estate could assert no interest in the land except the right to redeem from the Blackwell and Dixon heirs, and the plaintiff having failed to redeem, the defendant by subsequent purchase under said liens acquired title to the land clear of any rights plaintiff acquired under his purchase at the execution sale."

While some of the special charges requested and refused may not be technically correct in every particular, they were sufficient to call the attention of the court to the rules of law which we think applicable to and decisive of the controlling question in this case. If Epperson paid the one-sixth of the purchase money to the heirs of Blackwell which released the land to that extent from the vendor's lien during the existence of the partnership of Epperson and Wright, then the presumption would obtain that the payment was made with partnership funds.

We think it unnecessary, however, to further discuss this point, for the execution under which appellee purchased was not against the firm of Epperson & Wright, but against the estate of Epperson in the hands of the executors. Under this writ only the property of Epperson's estate or the interest of that estate in the property belonging to the firm of Wright & Epperson could be levied. If appellee relied for recovery upon the fact that the land was the property of the firm at the time the levy was made under which he purchased, the decree of foreclosure in favor of the Blackwell heirs reciting that Epperson paid the one-sixth of the purchase money, it devolved upon him to prove that the payment was made during the existence of the partnership of Epperson & Wright. Appellee contends that as there was no evidence as to the time when this

payment was made it must be presumed that it was made at the time of the purchase.  Such presumption can not be indulged in the face of the recitation in the deeds to Epperson & Wright that no part of the purchase money was paid at the time of the purchase.

Appellee having purchased under an execution against the estate of Epperson is in privity with Epperson, and has in virtue of his purchase only such rights as Epperson's estate had at the time of the levy of the execution.  Being a privy in estate with Epperson he is bound by the recitations in the decree in favor of the Blackwell heirs as Epperson would be.

Did the release of the vendor's lien against one-sixth of the land obtained by the payment of one-sixth of the purchase money by Epperson enure to the benefit of the Dixon mortgage?  It was in effect decided in the former appeal that it did if the mortgage contained sufficient covenants of warranty.  (The mortgage was not in evidence on the former appeal.)  It is conceded that the mortgage contains no express covenant of warranty, but it is contended that the recitation in the conveying clause, the use of the word "convey," the recitation that Epperson owned an undivided one-half of the land, together with the recitation in the decree in favor of the Blackwell heirs, constitute an estoppel against Epperson and those in privity with him.

Mr. Justice Nelson delivering the unanimous opinion of the court in Van Rensselaer v. Kerney, 11 Howard, 643, after a very full review of many leading authorities, says:  "The principle deducible from these authorities seems to be that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument by way of recital or averment that he is seized or possessed of a particular estate in the premises and which estate the deed purports to convey, or, what is the same things, if the seizin or possession of a particular estate is affirmed in the deed either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterward denying that he was so seized and possessed at the time he made the conveyance.  The estoppel works upon the estate and binds an after-acquired title as between parties and privies."  Carver v. Jackson, 4 Pet., 7; Irvine v. Irvine, 9 Wall., 625; Box v. Lawrence, 14 Texas, 555, 556; 21 Texas, 763; 28 Texas, 561; Perin v. Perin, 62 Texas, 479, 480.

If Epperson would be estopped from denying that his payment of one-sixth of the purchase money and consequent release of that much of the land from the vendor's lien enured to the benefit of and that the one-sixth of the land thereby became subject to the Dixon mortgage, it seems that appellee, claiming under Epperson by purchase subsequent and with notice, would be likewise estopped.

Under the recitations in the decree of foreclosure in favor of the

Blackwell heirs and the recitations in the mortgage deed to Dixon, Epperson could not be heard to deny that appellant acquired an undivided five-sixths of the land by his purchase under the former decree, nor could he be heard to deny that appellant acquired an undivided half of the land by his purchase under the decree of foreclosure in favor of Dixon to the extent of interest owned by him in the land free from prior liens at the time the decree of foreclosure was entered. We think that appellee is equally estopped.

At the time the execution was levied under which appellee claims he had notice of the decrees foreclosing the liens in favor of the Blackwell heirs and Dixon, and by his purchase he acquired only the equity of redemption then held by Epperson's estate. He acquired the right to redeem the land from the decrees of foreclosure at any time prior to the execution of these decrees by sales made thereunder. There is no pretense that he ever offered to exercise his right to redeem, and we think his right was lost by the execution of the decrees. Fisher v. Foote, 25 Texas Supp., 311; Willis v. Smith, 66 Texas, 43.

We think the court erred in refusing to charge the jury upon the questions presented by the special charges requested.

It is also insisted that the court erred in excluding the deeds of trust executed by the executors of Epperson to Farley and Lawson, trustees, to secure the indebtedness of the estate to P. J. Willis & Bro. The objection to these instruments was upon the ground that the executors had no power to execute them. This question was decided against appellant on the former appeal, the instruments having been offered and excluded on the former trial on the same ground. We are bound by the decision then made, however much we may be inclined to a different view.

Appellee had charged in his petition that appellant had fraudulently taken a large quantity of personal property belonging to the Epperson estate, and had never accounted to the estate for the proceeds of the property, and also charged appellant with fraud in his several purchases of the land. Appellant was in possession of the land and personal property under sales and purchases under these deeds of trust at the time appellee's execution was levied. Appellee had introduced the deeds of trust in evidence for a limited purpose, and we think appellant should have been permitted to offer them for any purpose except to prove title. Under the former decision in this case they were not admissible for the purpose of proving title in appellant, but after they had been offered by appellee for a limited purpose we think they should have been admitted in behalf of appellant to show how he came into possession of the personal property and as tending to disprove the charge of fraud.

We deem it unnecessary to consider other questions presented, as they become immaterial under our view of the law of the case.

Appellee filed cross-assignments of error, but they are not referred to in

his brief, nor are the independent propositions contained in his brief predicated upon his assignments of error, nor are they in any way germane to his assignments. The questions attempted to be presented by appellee's independent propositions can not, therefore, be considered.

Because of the errors indicated we are of opinion that the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted January 29, 1889.