**GRAVES v. HAYNES.   (No. 230-3408.)***

(Commission of Appeals of Texas, Section A.
June 1, 1921.)

1. Trial ⬳261 — Requested instruction not technically correct held to require correct instruction.

In an action brought against defendant as seller for losses resulting from cattle being diseased, defended on the ground that defendant acted merely as plaintiff's agent, a requested instruction presenting such defense, while not technically correct in every particular, held so nearly so as to require the court to give a proper charge on such defense.

2. Fraud ⬳13(3)—Belief of party misrepresenting fact unimportant.

The fact that seller of cattle may have believed them safe, sound, and free from tick fever, was unimportant, if in fact the buyer believed seller's representations to that effect to be true and relied upon them in purchasing the cattle.

3. Fraud ⬳22(1)—Duty to investigate truth of representation as to diseased cattle.

A buyer of cattle was under no duty to investigate the truth or falsity of seller's representations that the cattle were safe, sound, and free from tick fever.

4. Fraud ⬳20 — Reliance on representations as to diseased cattle.

If buyer of cattle represented to be free from tick fever believed the representations and relied on them and would not otherwise have purchased the cattle, he is entitled to recover damages, although he relied in part on what he saw when he inspected the cattle; but, if he relied in fact on what he saw, he cannot recover.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Allen Haynes against Herbert Graves. Judgment for plaintiff, and the defendant appealed to the Court of Civil Appeals, which affirmed the judgment (214 S. W. 665), and the defendant brings error. Judgment of district court and that of Court of Civil Appeals reversed, and cause remanded to the district court for another trial.

Bryan, Stone & Wade, and Moses & Rowe, all of Fort Worth, for plaintiff in error.

Jno. L. Ward, of Tulsa, Okl., J. H. Evetts, of Temple, and Capps, Cantey, Hanger & Short and David B. Trammell, all of Fort Worth, for defendant in error.

GALLAGHER, J. Allen Haynes, defendant in error, sued Herbert Graves, plaintiff in error, and alleged that he had theretofore purchased from Graves, in Fort Worth, 295 head of cattle to be shipped to Bell county, Tex., for feeding, breeding, raising, and selling purposes, and that such purposes were well known to Graves. He further alleged that Graves falsely and fraudulently represented that said cattle were safe, sound, and free from disease, and that such representations were not true, and that said cattle were then and there diseased with cattle fever, or some other contagious or infectious disease, which rendered them unsound, unfit for the uses intended, and without value. He further alleged that he was ignorant of the con-

dition of the cattle, and from the inspection afforded and made by him he could not detect that said cattle, or any of them, were diseased, and that he relied on said representations and warranties, and believed them to be true and acted thereon by buying and paying for said cattle. He further alleged that 101 head of said cattle died within a very short time after they were delivered to him, and were of no value, and that the remainder of said cattle were either affected, or soon became affected, with said disease and were thereby greatly depreciated in value.

It was further alleged that the term "safe" meant that the cattle came from below the quarantine line and would not contract the fever on being shipped to Bell county.

Graves pleaded general denial, and specially denied that he was the owner of the cattle in question, and alleged that Haynes instructed him to go upon the market at Fort Worth and purchase for him about 300 head of cattle, and that he did so, paying for such cattle and holding them until Haynes came and received them and repaid the money expended by him in the purchase of the same, together with a commission of $6 per car, and the expense incurred in carrying out such commission.

He further alleged that in purchasing and paying for said cattle and paying the expenses incident to holding them until delivery he was acting as agent and commission man for Haynes, and that such was the customary way in which such business was transacted. He further alleged that he, in good faith, used his best skill and judgment in buying said cattle, and that they were in fact from south of the quarantine line and were known as "safe cattle."

There was a trial before a jury, and testimony was introduced tending to sustain the several allegations of the respective parties.

Haynes testified that Graves represented the cattle to be safe, sound, and free from fever, and Graves corroborated him, and further testified that the cattle did come from what is known as safe territory—that is, territory south of the quarantine line—and that they were sound and free from fever at the time they were delivered to Haynes.

There was testimony to the effect that the cattle in question developed cattle fever within a few days after Haynes received them, and that the injury suffered by him in the death of a part, and in the depreciation in value of the remainder, of these cattle, resulted from that disease.

There was expert evidence that cattle fever was contracted solely from the bite of a certain kind of tick, and that cattle north of the quarantine line are free from ticks, and cattle south of the line had, or were supposed to have, such ticks on them; that there was no absolute immunity to tick or cattle

fever, but there was a condition known as resistance existing when cattle had spent all their lives in ticky territory; such cattle might develop cattle fever and die of it; that Bell county was at that time south of the line and in ticky territory, and cattle to be shipped there should have been from below the quarantine line, or from ticky territory; that a change of cattle from one part of the ticky territory to another involved a chance of great loss, because of the difference in resistance to the infection of different localities; and that cattle moved from one pasture to another frequently developed such fever and died therefrom.

There was testimony to the effect that both Haynes and Graves were experienced cattlemen.

There was testimony to the effect that Haynes, in company with Graves, went among the cattle and inspected them and noticed that some of the cattle had ticks on them and some did not.

The court, on the issue of agency, charged the jury as follows:

"You are further charged that if you find and believe from the evidence that the said Herbert Graves, in purchasing said cattle, acted as agent only for the plaintiff, Allen Haynes, and as such agent used his best skill and judgment in buying 'safe' and sound cattle that were not afflicted with fever, then and in such event you will find for defendant, unless you should find in favor of plaintiff under some other portion of this charge.

"But, in this connection, you are further instructed that even if you find and believe that said Graves in purchasing said cattle acted as agent of plaintiff only, still if you should further find that in purchasing same he failed to use his best skill and judgment to secure cattle which were 'safe' (as the word is used in the evidence) and sound and not afflicted with cattle fever, or if you find and believe that he fraudulently misrepresented to plaintiff the condition of said cattle, or fraudulently represented that they were 'safe' cattle when they were not (if they were not), and thereby induced the plaintiff to take same, and that at such time some or all of said cattle were afflicted with cattle fever and that some of them died therefrom, then and in such event you will find for plaintiff the market value of such cattle as you may believe so died from fever; and if you further find and believe that others of said cattle had cattle fever or were caused to contract said disease by reason of others of such cattle being so afflicted therewith at the time they were received by plaintiff, and that their market value was thereby depreciated, then and in such event you will find and return a verdict in favor of plaintiff for the difference in the market value of such cattle at the time of such purchase in the condition in which they would have been but for such fever or disease and their value in the condition in which they were in after having such disease."

Plaintiff in error in appropriate terms excepted to the first paragraph of this charge,

because it limited his right to a verdict in his favor, if acting as agent, to the contingency that the jury should not find for the plaintiff under some other portion of the charge, and because it did not charge affirmatively that he should have a verdict in his favor if the jury found he acted as the agent of and in pursuance of a commission from the plaintiff. ·

He excepted to the second paragraph thereof, because there was no evidence of his failure to use his best skill and judgment, and no evidence that he made any fraudulent or willful misrepresentations in the matters referred to in said charge.

The jury returned a verdict for damages in favor of defendant in error who was plaintiff in the trial court, and judgment was entered in his favor thereon. The Court of Civil Appeals affirmed the judgment (214 S. W. 665), and the case is before us for hearing on writ of error granted by the Supreme Court.

[1] Plaintiff in error assigns as prejudicial error requiring reversal, the action of the court in refusing to give to the jury the following special charge requested by him, to wit:

"If you believe from evidence that in acquiring the cattle, defendant did so, not for himself, but upon an order and commission, if any, previously given by the plaintiff, and if you further believe from the evidence that in executing such commission, if any, defendant used ordinary care, that is, such care as a person of ordinary prudence would use under the same or similar circumstances, to purchase for plaintiff cattle which were sound and free from disease, then and in such event you will find and return a verdict for defendant, even though you should believe from evidence that some or all of the cattle so purchased were affected with tick fever, at the time they were shipped to Bell county."

The only affirmative defense relied on by plaintiff in error was that he acted in the transaction in question as agent for defendant in error, upon an order or commission previously given to him.

If such were the facts and he accepted such agency and undertook to execute such commission, and in doing so exercised reasonable skill and ordinary care to purchase for defendant in error cattle which were safe, sound, and free from fever, he discharged the full measure of his duty, and was not liable to him even though some, or all, of such cattle were affected with fever at the time they were shipped to Bell county. Mechem on Agency (2d Ed.) §§ 1275, 2410.

The charge of the court did not present this defense as fully and forcibly as plaintiff in error was entitled to have it presented. He was entitled, upon proper request, to have it presented affirmatively and without being in any way limited by other portions of the court's charge. In the case of Wichita Falls

231 S.W.—25

Traction Co. v. Adams, 107 Tex. 612, 614, 615, 183 S. W. 155, 156, the Supreme Court, in an opinion by Chief Justice Phillips, says:

"In a jury trial where the case is submitted under a general charge of the court, a party is entitled to an affirmative presentation of an issue raised by the pleading and evidence upon which he relies for the establishment of his cause of action or his defense. For a proper application of the law of the case to the different phases of the evidence as a guide for the jury's action, he is not remitted to inferences which may be drawn from the charge. Whether plaintiff or defendant, it is his right, upon proper request, to have the issue affirmatively submitted by the court through an appropriate instruction grouping the facts which, if determined in his favor, will, under the law, entitle him to the verdict. This, it may be said, is the distinct office of the special charge under our practice. El Paso & Southwestern Railroad Company v. Foth, 101 Texas, 133, 100 S. W. 171, 105 S. W. 322; St. Louis Southwestern Railway Company v. Hall, 98 Tex. 480, 85 S. W. 786; Missouri, Kansas & Texas Railway Company v. McGlamory, 89 Texas, 638, 35 S. W. 1058; Texas Trunk Railway Co. v. Ayres, 83 Tex. 268, 18 S. W. 648."

The requested charge, while not technically correct in every particular, was so nearly so as to require that a proper charge be given. Freybe v. Tiernan, 76 Tex. 286, 291, 13 S. W. 370; Willis v. Smith, 72 Tex. 565, 572, 10 S. W. 683.

[2] Plaintiff in error complains of the action of the trial court in refusing his special requested charge as follows:

"If you believe from the evidence that in acquiring the cattle, defendant did so for himself and not for the plaintiff upon an order, if any, previously given, and if you should further find from the evidence that at the time the cattle were delivered to plaintiff some or all of them were not sound and free from disease, but if you should find from the evidence that the defendant in good faith believed that said cattle were sound and free from disease, and that before accepting same plaintiff went among and inspected the cattle for himself, then and in such event you will find and return a verdict for defendant."

The fact that the plaintiff in error may have believed that the cattle were safe, sound, and free from fever, was unimportant if, in fact, defendant in error believed the representations to that effect to be 'true and relied upon them in purchasing the cattle. Buchanan v. Burnett et ux., 102 Tex. 492, 495, 119 S. W. 1141, 132 Am. St. Rep. 900.

[3, 4] Defendant in error was under no duty to investigate the truth or falsity of such representations. The Supreme Court, in Labbe v. Corbett, 69 Tex. 503, 509, 6 S. W. 808, 811, lays down the rule in the following quotation from another authority:

"When once it is established that there has been any fraudulent misrepresentations, * * * by which a person has been induced to enter

into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue, * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'"

If defendant in error believed such representations and relied on them and would not have purchased the cattle if they had not been made, he would not be denied his action, even though he did not rely solely on such representations, but relied in part on what he saw when he inspected the cattle. Buchanan v. Burnett et ux., 102 Tex. 492, 495, 119 S. W. 1141, 132 Am. St. Rep. 900.

However, if he did not rely either in whole or in part on such representations, but relied in fact on what he saw when he inspected the cattle, he could not recover because of the making of such representations. Cresap v. Manor, 63 Tex. 485, 488; Garrett v. Burleson, 25 Tex. Supp. 41, 44.

The court did not err in refusing such requested charge. If this issue is made by the evidence on another trial, the court upon proper request should give a charge in accord with the authorities above cited.

The other assignments urged in the application for writ of error are based on matters which may not arise on another trial, and are therefore not here passed upon.

We recommend that the judgment of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the district court for another trial.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes