HAVARD et al. v. SMITH et al. (No. 1753.)

Court of Civil Appeals of Texas. Beaumont.
Jan. 24, 1929.

Ike S. Handy, of Houston, for appellants.

E. B. Pickett, Jr., of Liberty, for appellees.

O'QUINN, J. In 1898, owning a tract of 200 acres of land on the Santos Coy grant, Liberty county, 1360 varas north and south by 830 varas east and west, Jeremiah Havard sold to his son, John Havard, a tract of 123 acres off the west side of this 200-acre tract. In 1909 he sold to one Robertson a tract of 50 acres off the north end of the remaining strip on the east side. By these two sales he had left of his 200-acre tract only 27 acres in the southeast corner. He also owned another tract of 73 acres on this Santos Coy grant east of and adjoining the 200-acre tract at its southeast corner, the south boundary line of the 200-acre tract extended being the south boundary line of the 73-acre tract. By deed of June 30, 1915, Jeremiah Havard conveyed to Thomas S. Falvey all his remaining interest in these two tracts of land, describing the land as follows:

· "Being a part of the Santos Coy Grant of land on the west bank of the Trinity River in Liberty County, Texas, about 17 miles N. 15 W. of the town of Liberty and being a part of Lot No. 9, set apart by a decree of the District Court of Liberty County to Wharton Branch in a partition Suit of the Santos Coy Four League Grant.

"Beginning 1800 varas West and thence N. 1 W. 718 vrs. from the S. E. corner of said Lot No. 9, a stake for corner from which a White Oak 16 in dia. S. 30 W. $47/_{10}$ vrs. dist. and another White Oak 10 in dia. brs. N. 4 W. 5 vrs.

"Thence N. 1 W. 1380 vrs. to a stake for corner, from which a Sweet Gum vrs. S. 38 E. $102/_{10}$ vrs. and a Water Oak 20 in dia. brs. S. 16 W. $48/_{10}$ vrs.

"Thence E. 830 vrs. to a stake for corner from which a Sweet Gum 24 in dia. brs. S. 25 W. $145/_{10}$ vrs. another 24 in dia brs. S. 10 E. 8 vrs.

"Thence S. 1 E. at 685 vrs. a gully, 6 vrs. wide, at 1348 vrs. a stake for corner, from which a Holly 8 in dia. brs. N. 32 W. 17.3 vrs. another 8 in dia. brs. N. 88 W. 5 vrs. dist.

"Thence S. 98 W. 830 vrs. to the beginning, less 123 acres sold to John Havard out of said two hundred acre tract of land. Also the following tract of land containing 73 acres of land on the West side of the Trinity

River in said Liberty County, Texas, about 17 miles N. 15 W. from the town of Liberty and being a part of Lot No. 9, set apart to Wharton Branch in the partition of the Santos Coy Four League Grant.

"Beginning at the S. E. corner of a survey of two hundred acres heretofore sold to said Havard.

"Thence N. 1 W. 412 vrs. to a stake from which a gum marked X brs. S. 62 W. 8 vrs. and a White Oak marked X brs. 62½ E. 8 vrs.

"Thence N. 89 E. 1002 vrs. corner a stake on the east line of said Lot No. 9 a Pin Oak marked X brs. S. 74½ W. 5⁸⁄₁₀ vrs. a White Oak marked X brs. N. 1 E. 3⁴⁄₁₀ vrs.

"Thence S. 1 E. on said east line of said lot No. 9, 412 vrs. a stake for corner.

"Thence S. 89 W. 1002 vrs. to the beginning, containing 73 acres of land, less 50 acres off said tract conveyed to C. C. Cherry. The land herein conveyed being the unsold portion of a certain 200 acre tract, and the unsold portion of a certain 73 acre tract, above described, the amount of land herein conveyed being One hundred acres of land more or less, being all the land owned by us in the Santos Coy grant of land, except a five acre tract south of the land herein conveyed, known as the Five Acre School House Tract."

This suit was instituted by the heirs of C. C. Cherry, named in the Havard-Falvey deed, against the heirs of Jeremiah Havard and Thomas S. Falvey, and those holding under Falvey, to recover a specific 50 acres on the 73-acre tract. The heirs of Havard answered by demurrers and pleas of not guilty. They also pleaded title by limitation. In addition to answering defensively, the heirs of Havard also answered by way of cross-action in the nature of trespass to try title, claiming to own the land in controversy. It is not necessary to state the nature of the pleas between the heirs of Cherry on the one part and Falvey and those holding under him on the other part. The Cherry heirs and Falvey and those holding under him settled their differences by agreement, whereby the title to the entire 73-acre tract was satisfactorily adjudged as against them. In view of this settlement, it is not necessary to state the nature of the pleas between these parties, except to say that the Falvey interests plead affirmatively that the recitation in their deed from Havard, to the effect that the 50 acres had been sold to Cherry, was a mistake. After this agreement had been made and approved by the trial judge, verdict was instructed in favor of the Cherry heirs as against the Havard heirs for the land in controversy, and also judgment against the Havard heirs upon their cross-action. By their appeal, appellants are not attacking the judgment of the trial court, except in so far as it attempts to award to the Cherry heirs the 50 acres in controversy.

■■ The verdict was correctly instructed in favor of the Cherry heirs on their action in trespass to try title, and against the Havard heirs on their cross-action in the nature of trespass to try title. All parties to the Havard-Falvey deed were bound by the recitation that 50 acres of the 73-acre tract had been sold to C. C. Cherry, and by the further statement that the land conveyed by that deed was all the land owned by Jeremiah Havard in the Santos Coy grant of land, except the 5 acres mentioned therein.

In Kimbro v. Hamilton, 28 Tex. 560, the Supreme Court said that between the parties the "matter recited need not at any time be otherwise proved." It was further held that such a recital is not secondary, but primary evidence, "which can not be averred against, and which forms a muniment of title." That proposition has full support in Willis v. Smith, 72 Tex. 573, 10 S. W. 683; Box v. Lawrence, 14 Tex. 545; Hardy v. De Leon, 5 Tex. 244; Carver v. Jackson, 4 Pet. 83, 7 L. Ed. 761; Denn v. Cornell, 3 Johns. Cas. (N. Y.) 174.

In Parker v. Campbell, 21 Tex. 763, it was said: "There is no better settled doctrine than that, where a party has solemnly admitted a fact by deed and under his hand and seal, he is estopped, not only from denying the deed itself, but every fact which it recites. [Jackson v. Parkhurst & Gurney], 9 Wend. R. [N. Y.] 209; [Trimble v. State of Indiana], 4 Blackf. [Ind.] 437. It is unnecessary to cite the numerous cases which establish this general doctrine." Such recitations have the same weight against privies as against the original parties. Kimbro v. Hamilton, supra.

In their cross-action, appellants, as heirs of Havard, were met by his declarations that he was selling to Falvey by that deed all the land owned by him on the Santos Coy grant, except 5 acres which did not form a part of either tract described in their deed, and by the further recitation that 50 acres of the 73-acre tract had been previously sold to Cherry. The plea to reform and correct the alleged errors in these recitations was barred by limitation. Standing thus unmodified, they were an absolute bar to appellants' cross-action. We agree with appellants that the description in the Falvey deed is clear and unambiguous, and, therefore, that parol evidence was not admissible to vary its terms. But we do not agree with them in their application they make of these propositions. They contend that the recitation, that their ancestor had previously sold 50 acres to Cherry, showed affirmatively an intention to convey to Falvey only 23 acres. This exception cannot be construed as if it stood alone, since Havard, by the additional recitation, made clear his intent to convey to Falvey all the land owned by him on the 73-acre tract. Therefore, the authorities

cited by appellants are not in point, to wit: Higgins Oil & Fuel Co. v. Victory Co. (C. C. A.) 230 F. 421; Rushton v. Hallett, 8 Utah, 277, 30 P. 1014.

██ We think these recitations were also available to plaintiffs as evidence in their action against appellants, and, when offered by them, constituted a muniment of title in their favor in the nature of an absolute estoppel, which could not be attacked by extraneous evidence. We say this, though the record shows no deed from Havard to Cherry. If such recitations do not constitute a muniment of title, operating as an absolute estoppel, they were admissible as evidence on the issue of title (Box v. Lawrence, supra), constituting a prima facie case in favor of plaintiffs. The weight of such recitations must be determined primarily by the character of the recitations, and secondarily by extraneous evidence. Havard not only recited that he had sold 50 acres to Cherry, but, in recognition of that fact, declared in the most positive terms that by his deed he was conveying to Falvey all his remaining interest in the two tracts as described. One of his sons testified that his father had sold the 50 acres: "I just heard him say he had sold the land." This son also testified that at one time he saw a document in the possession of Cherry, "being my father's signature relating to land * * * Mr. Cherry had the document when I first saw it, and he showed it to me." B. R. McDonald testified that in 1911 or 1912 or 1913, Jeremiah Havard said: "He had sold that fifty acres to Mr. Cherry * * * he pointed right along there where they were getting wood in the pasture when he said he had sold that fifty acres to Cherry, almost in the center."

H. E. Blair, after identifying the land in controversy, testified that he and Mr. Havard were riding "in there looking over his cattle and came up to this land * * * and I made the remark that Mr. Cherry owned a nice farm and he says, 'Yes, I sold Mr. Cherry that piece of land.'"

John Havard, another son, filed a disclaimer, and asserted no claim against plaintiffs' contention. The evidence offered by appellant was only circumstantial in its nature, and, against the case made by plaintiffs, it did not even amount to a scintilla.

██ Appellants assert that the description under which the Cherry heirs claimed was so indefinite as to be void, and, therefore, insufficient on which to maintain as plaintiffs an action of trespass to try title. This proposition is not sound. Havard owned a tract of 73 acres. The evidence shows that he had sold 50 acres to Cherry. Under Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 774, this description was sufficient to make Cherry a tenant in common with the other owners of the 73 acres. As the Ha-

vards had no title, this title was sufficient to maintain the action in trespass to try title. But we think, as against the Havards, the plaintiffs showed a title to the specific 50 acres sued for under the Falvey deed. Falvey and that Cherrys were at least tenants in common. Falvey made an equitable partition between himself and the Cherrys by appropriating the 23 acres on the east end of the 73-acre tract. This had the effect of vesting in the plaintiffs a fee simple title to the remaining 50 acres.

Appellants complain that the trial court erred in instructing against their pleas of limitation. They have made no such case before us. By way of argument they say they made this issue, but quote no evidence to that effect. Appellees have quoted from the record showing affirmatively that the issue of limitation was not in the case. Since appellants have failed to brief their proposition, we accept the statement made by appellees, and overrule the contention.

It follows that the judgment of the trial court must be affirmed, and it is accordingly so ordered.