## BAUMGARDNER et al. v. RUSSELL REALTY CO. et al.

### No. 930.

Court of Civil Appeals of Texas. Waco.

Oct. 9, 1930.

Rehearing Denied Nov. 20, 1930.

Clint & Eades, of Dallas, for appellants.

Rice, Hyman & Suggs, Victor Hexter, Coombes & Coombes, J. J. Collins, A. A. Long, W. E. Knight, Paul McCarroll, and H. P. Kucera, all of Dallas, for appellees.

BARCUS, J.

In 1915, appellee, Russell Realty Company, who owned the south 9 acres, and D. W. Wilson, who owned the north 6 acres of a 15-acre tract of land in the corporate limits of Dallas, abutting on Cedar creek in Oak Cliff, filed the following plat and dedication thereof, which was filed with and approved by the city of Dallas and duly recorded in the deed records of Dallas county:

Belvedere Addition to Dallas, Texas.

The original field notes of the tract began at its northwest corner, a point in the center of Cedar creek. A few months after the land was platted, D. W. Wilson sold lots 1, 2, and 3, in block A, to J. D. C. Mayabb, describing same according to said block and lot numbers, and pointed out to Mayabb a stake in the north line of Summit View street and the southwest corner of said lots. A house was constructed on said lots in 1915, and a fence was built on the south line thereof, beginning at the stake as located by Mr. Wilson. By several mesne conveyances the property was transferred; each time the same description being used in the deeds. In 1920, appellee W. H. Wadlington, who then owned said lots, conveyed same by warranty deed to C. W. Long and retained a vendor's lien note for

$975 as part of the purchase price thereof. Long sold the lots of A. Foshee, who assumed the payment of the Wadlington note. Mr. Foshee died, leaving his wife and two minor children. Mrs. Foshee, after the death of Mr. Foshee, conveyed lots 2 and 3 to appellant F. D. Baumgardner, who assumed the payment of the Wadlington note, and he built a house on said lots. Thereafter Mrs. Foshee married F. H. Pool.

At the time the land was platted, it was a rough broken tract of land. The streets running east and west, as platted, did not connect and could not connect with any other streets in the city of Dallas. Fleming street, running north and south, connected with a through street in the adjoining addition. In 1925, appellee Russell Realty Company, who owned blocks D; E, F; and G, employed Mr. Preston, a surveyor, to lay out the respective lots and streets in said addition and mark the corners thereof. Said surveyor began his survey from a stake that was pointed out to him as the southwest corner of block F of said Belvedere addition. He did not attempt to verify its accuracy. According to his survey, Summit View street on the south of lots 1, 2, and 3 was placed at a point considerably north of that originally pointed out and marked by Mr. Wilson as being the north line of said street, and the house built by Baumgardner on lots 2 and 3, and the house owned by appellee Mrs. Foshee and her children on lot 1, were partially in said street as located by him.

In 1926, appellee city of Dallas attempted to open Summit View street at the place designated in the survey as made by Mr. Preston. Upon protest being made to the city of Dallas by appellants and a claim being made by them that the street was not located where the city was attempting to open same, it stopped work on said street. Appellee Russell Realty Company, the owner of lots 7, 8, and 9, block D, then filed suit in trespass to try title against Mrs. Foshee and Mr. and Mrs. Baumgardner, claiming that the property occupied by said parties as their home was a part of said lots 7, 8, and 9, in block D. Mr. and Mrs. Baumgardner and Mrs. Foshee, who had married F. H. Pool, joined by her husband, filed answer in the suit of Russell Realty Company, and, in addition to filing answer to said petition, by way of cross-action for themselves and Mrs. Pool, alleged that she also was bringing the cross-action as next friend for her minor children by Mr. Foshee, and sought to enjoin the city of Dallas as well as Russell Realty Company from opening Summit View street at the place as located by Mr. Preston. Appellee W. H. Wadlington advertised the property for sale under his deed of trust, and Mr. and Mrs. Baumgardner and Mr. and Mrs. Pool brought an injunction suit to restrain the sale until the boundary line of said streets could be located. Mr. Wadling-

ton then filed cross-action in said injunction suit for judgment on his note, seeking a foreclosure against all parties, including the Foshee minors, to secure the payment thereof. Mr. and Mrs. Baumgardner and Mr. and Mrs. Pool and said minors, acting through their mother, Mrs. Pool, replying to the Wadlington suit, alleged that, if the Summit View street was as claimed by the city of Dallas and the Russell Realty Company, the consideration for which said note was given had failed in part, and asked that a credit be allowed on said note for the difference in the value of said lots as they would have been if located where Mr. Wilson had located same and the place as located by Mr. Preston. All of the suits were consolidated and tried to a jury, and, at the conclusion of the testimony, the trial court gave a peremptory instruction. The effect thereof was to definitely locate Summit View street at the place designated by Mr. Preston and gave title to the Russell Realty Company to all of the property lying south of said street, and fixed Summit View street as a public street in the city of Dallas, and gave Wadlington judgment for the full amount of his debt, together with a foreclosure of the vendor's lien against lots 1, 2, and 3, in block A, as against all of the defendants, including the Foshee minors. Mr. and Mrs. Baumgardner, Mr. and Mrs. Pool, and Mildred and Ray Foshee, minors, by their mother, Mrs. Pool, as next friend, have appealed.

██ Appellants, by various assignments of error and propositions, contend that the trial court was not authorized to render judgment against the Foshee minors in favor of any of the appellees, because said minors were neither cited to appear and answer the original petition or any of the cross-actions filed by the appellees, or either of them. We overrule these propositions. The record shows that F. D. Baumgardner and Mr. and Mrs. Pool, individually, and Mrs. Pool, as next friend for Mildred and Ray Foshee, her minor children, filed a cross-action against all of the appellees, under and by virtue of which they sought to establish title in themselves to the property as same was and had been occupied by them, and to establish the correct boundary line of Summit View street at the point where same had been pointed out to them, and sought, in the event the line of said street should be placed where appellees claimed, to have a credit placed upon the notes sued upon by Wadlington.

Article 1994 of the Revised Statutes provides specifically that minors may sue and be represented by next friend. In construing the above statute, our courts hold that, where a suit is instituted by minors through their next friend seeking title or possession of real estate or other property, the defendants therein may not only defend against the suit as brought, but may obtain affirmative relief with respect to the same property under proper pleadings

without the necessity of citing the minors who have brought the suit through their next friend to answer the cross-action. Cannon v. Hemphill, 7 Tex. 184; Hart v. Hunter, 52 Tex. Civ. App. 75, 114 S. W. 882 (writ refused). In Cannon v. Hemphill, Judge Hemphill, in writing the opinion for the Supreme Court, laid down the rule that a judgment rendered in a suit by an infant suing by his next friend was absolutely binding unless the judgment was attacked for fraud, collusion, or neglect. The same doctrine was announced in Hart v. Hunter, supra. In the instant case there is no contention that Mrs. Pool, as next friend for her minor children, is acting fraudulently or acting in any way against the interest of her children. The record shows that the children have an undivided one-half interest in lot 1, which is involved in the controversy, and that it is to their advantage to have the boundaries thereof established at the place contended for by appellants. Since Mrs. Pool, as next friend for her minor children, has by cross-action become the aggressor and seeks all of the relief that could have been afforded her or her minor children in any kind of an independent suit which she might have brought, and since the appellees are only seeking to prevent their recovery, a judgment rendered denying the minors a recovery would be in all things valid.

■ Appellants further contend that the trial court was in error in rendering judgment in favor of appellees, because there were material issues of fact raised by the pleading and testimony. There are a large number of assignments and propositions raising these issues as made by appellants which, under our view of the case, are not necessary to be discussed separately. If there were any issues of fact raised under the pleadings and testimony, the trial court was not authorized to withdraw same from the jury.

One of the controlling issues in this case to be determined affecting all parties at interest is the true location of Summit View street, and, upon the determination of this issue, several other material issues depend. Clearly, this issue was raised by the pleadings and testimony. At the time Mayabb purchased lots 1, 2, and 3, in block A in 1915, Mr. Wilson, who owned said property and sold same to Mayabb, located the north line of Summit View street, and drove a stake at the southwest corner of said lots in what he stated was the north line of Summit View street.' Mr. Stevens testified that he was present at said time and saw Mr. Wilson drive said stake, and he further testified that at said time the land was surveyed and Summit View street was located at said place. All of the parties who had owned said property testified that, at the time they purchased or sold said lots 1, 2, and 3, in block A, they thought and were told that the north line of Summit View street was at the place where Mr. Wilson had driven

the stake. The evidence tends to show that, at the time the house was originally built in 1915, said lots were fenced along Summit View street as so located by Mr. Wilson. According to the original field notes of the subdivision as platted, its beginning place was a point in the center of Cedar creek at the northwest corner of the platted tract. The plat as recorded shows that Front street is 30 feet wide, and lies south of Cedar creek. The blocks are numbered from A to G; A being in the northwest corner of the plat, and the north tier of blocks being A, B, and C. While the west line of block A is not given, according to the scale, it would be about 225 feet from Front street to the north line of Summit View street. The northwest corner of block C on the map appears to be located, and said block is shown to be, 300 feet long, and the south line of block C, according to the plat, extends to the middle of Summit View street. Mr. Stevens testified at length, and under his testimony the north line of said street, as located by Mr. Preston, was considerably north of the place as fixed and designated by Mr. Wilson.

■ If said street is as located by Mr. Preston, then, under the pleadings and evidence, it becomes a material issue as to whether appellants had been in actual possession of any portion of the property located in block D, claimed by appellee Russell Realty Company, openly and notoriously claiming same and having same under fence for a period of more than ten years prior to the institution of the suit by the Russell Realty Company. Unquestionably, if appellants and their predecessors in title had been in actual possession and control of any portion of said block D for a period of more than ten years, openly and notoriously claiming title thereto and using and occupying and enjoying same, adverse to appellee, Russell Realty Company, their title as against it would have matured by virtue of the ten-year statute of limitation.

■■ With reference to the litigation between Wadlington and appellants, if, as a matter of fact, Summit View street is located at the place where same has been placed by the trial court, then to the extent that said lots are shortened and thereby made less valuable has the consideration for which said note was given failed. Under the undisputed facts all of the parties connected with the lots from the time same were originally platted up until the time the survey was made by Mr. Preston in 1925, thought the north line of Summit View street was a considerable distance further south than that fixed by Mr. Preston. Our courts have definitely and uniformly held that, where land by mutual mistake has been bought and sold and it is thereafter shown that there is a shortage, the original vendee has a right to recover from the vendor the value of the shortage as for money received without consideration. Mc-

Carty v. Humphrey (Tex. Com. App.) 261 S. W. 1015; Moss-Tate Inv. Co. v. Owens (Tex. Civ. App.) 22 S.W.(2d) 1096. Appellee Wadlington concedes the above to be the correct enunciation of the law, his contention, however, is that the record shows that he sold the lots in question to C. W. Long and that Mr. Long is not a party to this litigation, and that the right of recovery by reason of said shortage accrued alone to Mr. Long. If this was a suit by Mrs. Pool for herself and minor Foshee children seeking a recovery against Wadlington for the shortage in said lots, then, under the rule pronounced by the Commission of Appeals in McCarty v. Humphrey, supra, she would not be entitled to said relief. In this case, however, the record shows that C. W. Long executed the notes and thereafter sold the lots to Mr. Foshee, who, as a part of the consideration therefor, assumed the payment of said note payable to Wadlington, and thereafter built a house on lot 1. After Mr. Foshee died, his widow, Mrs. Pool, sold lots 2 and 3 to Baumgardner, who assumed the payment of the entire Wadlington note, and thereafter built a house on said lots. Mr. Wadlington in this suit seeks to hold said parties under and by virtue of their assumption, and seeks to have the lien foreclosed on the real estate, together with both of the houses built thereon, to secure his entire debt. The record tends to show that Mr. Long sold the lots to Mr. Foshee, representing and believing that they were at the place and the size as located and pointed out to him by Wadlington at the time he purchased, and that Mr. Foshee purchased same and built his house thereon believing and relying upon the representations as made to him by Mr. Long, and that Mr. Baumgardner purchased the two lots and built a house thereon believing and relying upon the fact that the lots were of the size and located as originally pointed out by Wadlington when he sold the property to Mr. Long. It would indeed be a strange rule of law or equity to say that Mr. Wadlington could hold the parties by reason of their assumption of the notes and could recover not only the original property but all of the improvements placed thereon and a personal judgment against them by reason of their assumption, and that they could not defend by reason of a failure of the consideration in whole or in part which induced them to assume said note. Clearly, if the consideration for which the parties assumed the note has failed, then the holder thereof who seeks to hold said parties by virtue of their assumption is in no better position than if he had dealt directly with said parties. A person cannot accept the benefits of a contract made for his benefit without at the same time assuming its burdens.

■ In addition to the above, there are other issues raised in so far as appellant Baumgardner is concerned. The testimony tends to show that, at the time F. D. Baumgardner purchased the two lots from Mrs. Pool, Mr. Wadlington furnished the abstract and actively entered into negotiations with Mr. Baumgardner for the sale of said lots, and made all the contracts and propositions with reference thereto, and assumed the control and sale of said lots as though same belonged to him, and personally carried Mr. Baumgardner out to see the lots, and that he made personal and individual representations to Mr. Baumgardner with reference to the location of the south line of said lots and the location of Summit View street, and that Mr. Baumgardner purchased the lots and assumed the payment of the Wadlington note and built his house thereon acting and relying upon the positive and affirmative representations as made to him by Wadlington. As to whether Wadlington was acting in his individual capacity or as agent for Mrs. Foshee and as to whether appellant Baumgardner relied on the representations as made to him by Wadlington or made individual investigation and acted independently of said representations, all became issues of fact. The authorities seem to hold without conflict that, where it is established as a fact that there have been fraudulent misrepresentations made by a party which have been relied upon in part by another and by reason thereof he has suffered damages, the party making the false representations is liable to the party occasioned damages by reason of said false representations. Graves v. Haynes (Tex. Com. App.) 231 S. W. 383; Hart-Parr Co. v. Krizan & Maler (Tex. Civ. App.) 212 S. W. 835.

The judgment of the trial court is reversed, and the cause is remanded.