ALICE V. HENNING ET AL. v. JAMES A. WREN ET AL.

Decided May 27, 1903.

**1.—Limitation—Pleading.**

A plea of the five years statute of limitation by which several defendants, each claiming portions of the land sued for in severalty, unite in pleading possession of the land sued for, and that "they and each of" them plead the statute in bar of plaintiffs' claim, is a plea of limitation jointly and severally for each defendant, which will entitle each to hold the portion respectively to which he established the defense of limation.

**2.—Five Years Limitation—Misdescription in Record.**

Record of a deed in which a conveyance of land out of the David Wilson survey was recorded, by error in copying, as the Daniel Wilson, the description being insufficient to identify the land without the name of the survey, was not such a registration of deed to the land as would support limitation under the five years statute; nor could the defect in the registration be aided by parol evidence to identify the land.

**3.—Limitation—Payment of Taxes—Description.**

A claimant rendering his land and paying taxes by a wrong abstract number, but giving the correct name of the survey, in the absence of a statement of facts, it will be presumed, in favor of a finding by the court that the land rendered and paid on was that in suit, that there was evidence warranting such finding.

**4.—Limitation—Payment of Taxes—Excess in Survey.**

Where a grantee in a recorded deed pays taxes on the number of acres called for in his conveyance, believing that he is paying for the full quantity in his possession, he may assert the five years statute of limitation to the extent of the boundaries in his deed, though it contains a greater acreage than he has paid taxes on.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

*Will G. Barber, E. B. Coopwood,* and *P. N. Springer,* for appellants.

*A. B. Storey, S. B. McBride,* and *Walton & Walton,* for appellees.

STREETMAN, ASSOCIATE JUSTICE.—Appellants, as heirs of Mrs. Ophelia P. Wilson (who was afterwards Mrs. Talbot and finally Mrs. Henning), sought in this action to recover an undivided half interest in the Daniel Wilson league and labor of land in Hays County, Texas.

Upon change of venue to Caldwell County, a trial was had without a jury, and the court found the following facts:

"1.   On the 9th day of October, 1830, David Wilson and Ophelia P. Morrell were married at Vincennes, in the State of Indiana, and emigrated together to the State of Texas and county of Harrisburg, where they arrived in 1835.

"2.   That on February 2, 1838, said David Wilson appeared before the Board of Land Commissioners of said Harrisburg County and made the proper proof upon which said board issued to him, as a married man, a written certificate for one league and labor of land, which certificate is the basis for the patent to the land in controversy.

"3.   That prior to the 3d day of July, 1847, said David Wilson died, leaving surviving him only one child, named James M. Wilson, and his widow, Ophelia P. Wilson.

"4.   That on July 3, 1847, the State of Texas, by patent No. 433, vol. 15, granted to the heirs of said David Wilson, deceased, the league and labor of land described in the petition of plaintiffs in this cause and in controversy in this suit, it being survey No. 83 and abstract No. 476.

"5.   That said Ophelia P. Wilson was the wife of the original grantee David Wilson at the date of the issuance of said certificate and at the date of the accrual of his right thereto, and as such, she owned an undivided half interest in said land in her community right.

"6.   Prior to the 31st day of March, 1852, O. P. Wilson intermarried with one James Talbot, and was the wife of said Talbot on said date and prior and subsequent thereto.

"7.   That on said 31st day of March, 1852, said Ophelia P. Talbot, joined by her husband James Talbot, executed and delivered to Francis Brichta a deed attempting or purporting to convey all said land.   In said deed it is recited that she, as the widow of David Wilson, owned an undivided one-half interest in said land, and that James M. Wilson, as the son, owned the other undivided one-half interest.   She attempts to convey the whole survey of the land by this deed, reciting that her son James is a minor, and that she has been authorized to convey his interest by certain orders from the First District Court of the City of New Orleans, State of Louisiana.   This deed is properly acknowledged by the husband, James Talbot, but the purported acknowledgment thereof by the wife, Ophelia P. Talbot, was and is defective, and not in compliance with the requirements of the law.   Said certificate of acknowledgment of the wife wholly fails to show that the instrument was explained to her in any way by the officer, and further fails to show in any way that she acknowledged to the officer that she did not wish to retract same.

"8.   On May 15, 1855, said Ophelia P. Talbot married Albert Hen-

ning and continuously thereafter was the wife of and lived with the said Albert Henning until the 25th day of November, 1892, when said Albert Henning died.

"9. That said Ophelia herself died on the 12th day of August, 1897, intestate, and there has been no administration upon her estate and no necessity has ever existed therefor.

"10. That said Ophelia was the mother of only two children; that is the plaintiff, Alice V. Henning, who was born in 1857, being the daughter of said Ophelia and her last husband Henning, and the other child being the said James M. Wilson by her first husband David Wilson.

"11. That said James M. Wilson died in Harris County, Texas, intestate, and no administration was ever had upon his estate.

"12. That James M. Wilson was married in 1858 to Artimisia Habermacher, by whom he had three children, that is the plaintiffs Charles A. Wilson, Ophelia Black, whose husband is Peter Black, and James M. Wilson.

"13. That said Artimisia also died prior to the institution of this suit, and in the early part of 1897, and that said three children were the only children of the said Artimisia and the said James M. Wilson.

"14. That the said Ophelia P. Wilson never sold or conveyed her interest in the said land and never attempted to do so, except by the said deed executed to said Brichta, as shown above.

"15. That plaintiffs each claim the undivided one-half interest in said land involved in this suit through the said Ophelia P. Wilson, who is common source of title as to such undivided one-half interest.

"16. That the title to said land as conveyed by the said deed from said Ophelia Talbot and her husband, attempting to convey all of the survey, one-half for herself and one-half for her son, to said Brichta, passed by successive conveyances duly executed, acknowledged and recorded, to Mrs. Emma Burleson and John T. Allen, and D. C. Osborn; the said Mrs. Emma Burleson owning an undivided one-half thereof, and the said Allen and Osborn owning the other one-half thereof. That on the 21st day of April, 1871, the said Mrs. Burleson, joined by her husband, on the one hand, and Allen and Osborn on the other, executed partition deeds, by which they conveyed in severalty to said Osborn and Allen all the land lying north and east and northeast of the partition line, and by which they conveyed to said Mrs. Burleson in severalty all the land lying west and south and southwest of said partition line. The said partition line being set out in said partition deeds, the same as set out in the amended original answer of defendants in this cause.

"17. That on the 16th day of February, 1880, said Allen and Osborn conveyed to the defendant James A. Wren by deed of that date, all the land lying northeast of said partition line, describing it as containing 2302½ acres more or less. This deed was regularly acknowledged for record by the grantors and properly recorded in the deed records of Hays County, Texas, on March 3, 1880.

"18. On June 30, 1871, said Emma Burleson and her husband Ed. Burleson, by deed properly acknowledged and duly recorded immediately thereafter, conveyed to Joseph D. Sayers that portion of said survey lying south of said division line, and on March 11, 1878, by deed of that date properly acknowledged and immediately thereafter recorded, said Sayers conveyed to W. O. Hutchison the land so conveyed to him by same description.

"19. On September 12, 1882, W. O. Hutchison, by deed of that date duly recorded on September 26, 1882, in the deed records of Hays County, conveyed to D. A. Nance and S. M. Heard, nine different tracts of land in Hays County, Texas, one of them being described as 2304 acres, the west half of the David Wilson league and labor of land, and all thereof lying southwest of said division line.

"20. On April 8, 1884, D. A. Nance and wife, by deed of that date, duly acknowledged and recorded on April 19, 1884, in the deed records of said Hays County, conveyed to the defendant O. G. Parke an undivided one-half interest in the same lands conveyed by the said deed from W. O. Hutchison to Nance and Heard by a like description.

"21. On the 25th day of January, 1887, said S. M. Heard executed properly acknowledged for record and delivered to the defendant O. G. Parke a deed in writing of which the following is an exact copy:

"'State of Texas, County of Hays. Know all men by these presents that I, S. M. Heard of said state and county, for and in consideration of the sum of twenty-five hundred and twenty-five dollars, cash to me in hand paid by O. G. Parke, of said state and county, the receipt whereof I do hereby acknowledge, have bargained, sold, aliened, transferred and conveyed to the said Parke, to have and to hold to him and his heirs forever all of my interest, which is an undivided one-half interest in the following tracts and parts of tracts of land situated in Hays County and State of Texas, to wit: My undivided one-half interest in the David Wilson survey containing 1664½ acres; my one-half undivided interest in the R. J. Smith 640 acre survey; my undivided one-half interest in the 1006 acres out of the Martha Andrews 1280 acre survey, the aforesaid tracts of land being owned by myself and the said Parke in equal undivided interest, and hereby convey to him my undivided one-half interest in each of said tracts, the 1006 acres Martha Andrews survey is all of said survey except 274 acres the said Parke has conveyed to me his undivided one-half by deed of this date, and said 274 is described in said deed, and for the better description and identification of the aforesaid tracts and parts of tracts of land, reference is here made to all of the title papers, and to the record of the same, and to plat and map made by Otto Groos, the county surveyor of Hays County Mark A and the said Heard for myself, my heirs and legal representatives to warrant the title to the undivided one-half interest in said tracts of land herein conveyed and will defend the same against the claims of all persons claiming or to claim same by lawful title. Witness my hand, this 25th day of January, A. D. 1887, S. M. Heard.'

"The plat referred to in said deed was not introduced in evidence, and was not of record. That said deed was filed for record on its day of execution, and was recorded on the 29th day of January, 1887, in book V, pages 40-1 of the deed records of Hays County, Texas. That the clerk of the County Court of Hays County, in recording said deed, did accurately transcribe same upon the records, except where there is written in the deed 'David Wilson' it is written upon the record of said deed 'Daniel' Wilson, the result being that the deed shows upon the record exactly as originally written except 'Daniel' Wilson is substituted for David Wilson.

"22. On the 10th day of October, 1887, the State of Texas granted to the defendants O. G. Parke and S. M. Heard, as assignees of Martha E. Andrews, a patent No. 517, vol. 16, for 1280 acres of land, which land was and is in fact part of the same land covered by the grant heretofore made to the heirs of David Wilson. That said patent was duly filed and recorded in the deed records of Hays County, Texas, on March 8, 1888.

"23. By deed dated January 25, 1887, and at once thereafter recorded in said deed records, O. G. Parke conveyed to S. M. Heard the former's undivided one-half interest in 274 acres of land covered by the said Andrews patent, describing said 274 acres as being all thereof lying south and west of a certain line identified and described in said deed.

"24. By deed dated March 8, 1888, and recorded in said deed records on March 12, 1888, said S. M. Heard and wife conveyed an undivided one-half interest in a number of tracts of land, including the said 274 acres, to John W. Herndon, and by deed dated May 11, 1889, said John W. Herndon conveyed to the defendant B. F. Herndon an undivided one-half interest in a number of tracts of land, one being described as containing '274 acres out of the Martha E. Darden survey of 1280 acres.' This deed refers for further description to the deed to John W. Herndon, shown in next preceding finding of fact; and the word 'Darden' was written therein by the mutual mistake of the parties, instead of the word 'Andrews.'

"25. The defendant James A. Wren inclosed all of the land claimed by him and lying north, northeast and east of the said partition line fixed in the partition deed between Burleson, Allen and Osborn, in the latter part of 1886 and the first of 1887, the inclosure being completed by the first day of May, 1887. Since that date, said James A. Wren has used, occupied and enjoyed the land so claimed by him, holding the same peacefully and adversely to all persons, and claiming same as his own under deeds duly registered, and paying taxes thereon, as herein shown. Prior to his inclosure of said land, and subsequent to his purchase thereof, his wife died intestate, leaving only two heirs at law, that is the defendants John Wren and Mack Wren. The community one-half interest of their mother vested by inheritance in these two children and

the occupancy and claiming of the land by the father has been for himself and his said two children, they living with him.

"26. Since for and before the said year 1887, has rendered as appears from the assessor's rolls, collector's rolls and the original tax receipts for taxes 2032 acres of land, showing the original grantee as David Wilson. Such rendition has also shown the abstract number of the survey as No. 476, except for the year 1896 and 1897, for each of which years the rendition so made by the said James A. Wren shows the abstract number as 475. None of the renditions made by the said Wren show the certificate number, nor the survey number of the said land, nor the number of the patent, nor do they in any way describe the particular land so rendered by him, except only to show as the name of the grantee and the owner 'James A. Wren,' as the abstract No. '276' for the various years except 1896 and 1897, when it is shown as '475;' as the name of the original grantee 'David Wilson,' and as the number of acres rendered '2302.' The receipts for the taxes issued to the defendant Wren correspond with the renditions so made by him, and do not further describe the land.

"27. The defendants John Wren and Mack Wren made no rendition for taxes, and paid no taxes upon said land or any part thereof, but in paying same, their father James A. Wren did so in recognition of their rights therein and for their benefit.

"28. The defendant O. G. Parke in the latter part of 1886 inclosed and took possession of all that portion of the David Wilson survey, lying south, southeast and west of the said partition line, and has since then occupied same continuously and adversely to all other persons, claiming same as his own; except only the 274 acres above described. The said Parke prior to the year 1892, and for that year and for each succeeding year, has rendered for taxes 1664 acres of the David Wilson survey, and paid the taxes thereon, under such rendition. The rendition did not otherwise describe the particular land paid upon, except by showing, as the name of the owner 'O. G. Parke,' as the abstract No. '476,' as the original grantee 'David Wilson,' and as the number of acres rendered '1664.' No survey number, nor certificate number nor patent number are shown by such rendition, and the taxes paid by the defendant Parke were paid under such renditions only from 1884 to 1887, said Parke paid on 2303½ acres of the Wilson league, and from 1887 to 1901 he paid on 1664 acres of the Wilson and 1006 acres in the name of Andrews 1280-acre survey, that had been patented over the Wilson in 1887. Said Parke also rendered, as stated, prior to and for the year 1892, and for each succeeding year, 1006 acres of the land upon the M. E. Andrews survey, which rendition does not show the survey number, the certificate number nor abstract number. It does not otherwise describe the particular lands rendered except only by showing as the name of the owner, 'O. G. Parke;' as the abstract number '659;' as the original grantee 'M. E. Andrews,' and as the number of acres rendered

'1006,' and the payment of taxes by the said Parke was made under such rendition only.

"29. Defendants Heard and Herndon in the latter part of 1886 inclosed and took actual possession of the 274 acres of land, and have since then had and held actual peaceable possession thereof, claiming same adversely to all persons and as their own. For the year 1892, prior thereto and continuously since then, said Heard and Herndon have rendered and paid taxes upon 274 acres of the said M. E. Andrews survey. The renditions made by them as basis for the payment of such taxes did not show survey number nor the patent number of said land, nor otherwise describe the particular land paid upon, except only to show as the name of the owner 'Heard and Herndon;' as the abstract No. '659;' as the certificate No. '1264;' as the original grantee 'M. E. Andrews,' and as the number of acres '274.'

"30. On March 6, 1891, the State of Texas patented to A. Wyschetski, as assignee of the Texas Central Railroad Co., 314½ acres of land known as survey No. 3. This 314½ acres of land is in fact part of the said David Wilson survey, it being placed upon land which was not vacant, but which was already covered by the David Wilson survey. Since and including the year 1892, taxes have been each year regularly assessed upon said survey in the name of A. Wyschetski, and taxes so assessed have been paid by said A. Wyschetski, and none of the defendants have paid the taxes upon said land, unless same was paid by the defendant James A. Wren, under said rendition of 2302 acres, shown as being upon the David Wilson survey.

"31. For the year 1892, and each year since then and prior thereto, there was regularly assessed in the name of 'Unknown owner' 639 acres of the David Wilson survey, abstract No. 476, and the taxes so assessed against said 639 acres in the name of 'Unknown owner' have not been paid by any of the defendants, unless same were paid under their several renditions herein above shown.

"32. The testimony tends to show that the said David Wilson survey is considerably in excess in acres of the amount called for by the patent. The testimony tends to show and the plaintiffs ask the court to find that there is as much as 314½ acres of said Wilson survey over and above the 2302 acres as rendered for taxes by defendants Wren, and lying on the north, northeast and east side of said partition line; and the evidence further tends to show and the plaintiffs ask the court to find that there is lying on the other side of said line as much as 639 acres of said Wilson survey over and above the 1664 acres thereof as rendered for taxes by defendant O. G. Parke, and over and above all of portions of said Wilson survey covered by the Andrews patent. But the court, although so requested by plaintiffs, declines to find in any way on the question of excess in acreage or the amount thereof; because the court holds same to be wholly immaterial, as defendants having paid on as many acres as their title papers call for, and as many acres as they

thought they had, any excess in acreage can not defeat their title by limitation to all the land. The M. E. Andrews survey all lies upon the south, southwest and west side of said partition line, and the said Texas Central Railroad Co.'s survey lies upon the north, northeast and east side of said partition line.

"33. In making his said rendition of 2302 acres upon said Wilson survey said Wren intended thereby to render and pay taxes on all the Wilson survey which he had, including the land covered by said Texas Central Railroad Co.'s survey, which he has all the time claimed and yet claims and has possession of as part of said Wilson survey.

"34. Said Parke has during these several years supposed that said renditions of the 1664 acres of land of the said Wilson survey and 1006 acres upon the said Andrews survey covered all the land which he had within the limits of the Wilson survey, and in paying taxes under such renditions his purpose has been to pay upon all the Wilson survey owned or claimed by him.

"35. At the time the said Andrews survey was located by the said Parke and Heard, they then thought the land thereby covered was part of the Wilson survey and part of the land claimed by them upon the Wilson survey; but on account of the excess in acreage of the said Wilson survey, and as a precaution and upon the advice of the county surveyor of Hays County, they filed upon said land and caused same to be patented to them, as assignees of M. E. Andrews."

There is no statement of facts in the record. The court concluded that the defendants had established their defense under the five years statute of limitation, and rendered judgment accordingly.

The third and fourth assignments of error complain of the admission of evidence to support the plea of limitation, and of the judgment based thereon, because it is claimed to be at variance with the pleadings on that issue. Appellants insist that the answer of the defendants is a joint plea of limitation as to the whole tract, and that under this plea, they should not have been permitted to prove limitation separately as to particular portions of the tract. We do not deem it necessary to determine what the result would be if the pleading was as claimed. The portion of the answer setting up the five years statute on which the judgment was based is as follows:

"2. And further answering, defendants say, that if plaintiffs ever had any cause of action against the defendants for the land sued for, that the same has long been barred by the statute of limitation of five years; because they say that they (defendants) and those under whom they claim have had the actual, peaceable, adverse and quiet possession of said land sued for, using, enjoying, possessing and cultivating the same, and paying the taxes thereon, and claiming the same under a deed or deeds duly registered for more than five years next before the institution of this suit, and they and each of defendants say that if plaintiffs, or either of them, ever had any cause of action against them for said land,

32 Civil—35.

that said action is barred by the statute of limitations of five years, which they and each of defendants here plead in bar of this said action."

It is evident that this answer pleads the statute jointly and severally for each of the defendants. Had only one of the defendants been sued and plead limitation as to the whole tract, we do not doubt that he could have recovered any portion of the tract which the evidence might have shown him entitled to under the statute, although he might not have sustained his defence as to the whole. So each of the defendants having plead limitation as to the whole tract, we see no reason why they should not have been permitted to hold the portions respectively to which they established their defense of limitation.

The fifth assignment of error attacks the deed from S. M. Heard to O. G. Parke, and the record of said conveyance, as insufficient to support the five years statute of limitation. We are of opinion that this assignment should be sustained. The description in the deed as recorded is as follows:— "My undivided one-half interest in the Daniel Wilson survey, containing 1664½ acres." Had the deed been recorded as it is written, it would probably have been sufficient, but almost the only feature of the description which would serve to identify the land conveyed was the name of the survey, and this was so changed in recording the instrument that this means of identification was not only destroyed, but rendered positively misleading. The object of the statute in making registry of the deed necessary to enable the possessor to avail himself of the five years limitation, is to give notice to the owner that the defendant in possession is claiming under the deed, and if there is such falsity or uncertainty of description as that it will not answer the purpose intended, it can not be considered a deed duly recorded under the statute. Flanagan v. Boggess, 46 Texas, 335; Kilpatrick v. Sisneros, 23 Texas, 136. While it may not be necessary to literally transcribe an instrument, in order to say that it is duly registered, yet there should certainly not be such an error in recording it as to destroy the effect of the descriptive part of the instrument.

We can not believe that a record purporting to show a conveyance of an "undivided one-half interest in the *Daniel* Wilson survey, containing 1664½ acres," would impart notice that the grantee was claiming an undivided half interest of 1664½ acres in the *David* Wilson league and labor.

The remaining assignments complain of the insufficiency of the evidence to show payment of taxes for the time required to complete the bar of the statute.

It will be observed that during the years 1896 and 1897 the defendant James A. Wren rendered his land under abstract number 475, the correct abstract number being 476. For these years, however, the name of the survey was correctly given, as well as the name of the owner. There being no statement of facts, we can not tell what other evidence the court may have acted upon in finding, as it must have found, that

the payment was made upon the lands in controversy. It is not shown, as it was in Dutton v. Thompson, 85 Texas, 116, that there was another survey in the county to which the description would apply, and that the land rendered was really different from that claimed by the defendant.

We will presume, in the absence of a statement of facts, that there was evidence sufficient to warrant the court in finding that the land rendered, and upon which payment was made, was the land in suit, and that the abstract number, as shown on the tax rolls, was an error, but not sufficient to destroy the identity of the land on which taxes were paid.

It is insisted because there was evidence tending to show that the lands held by defendants actually contained a larger number of acres than rendered by them, that this would defeat the operation of the statute, at least as to the excess. The court found that the defendants rendered as many acres as their deeds called for, and as many acres as they thought they had. We do not hold that such a disparity might not exist between the quantity of land held in possession and that rendered for taxes as to prevent the statute from running, nor do we hold that the number of acres called for in the deed is conclusive; but we do not believe, where a grantee in a recorded deed pays on the number of acres called for in his conveyance, actually believing that he is paying for the full quantity in his possession, that he should be deprived of the benefit of the statute, because it may subsequently be ascertained that his tract is somewhat larger than he believed it to be.

We have carefully considered all of the assignments and find no error, except as shown in the fifth assignment. This error affects only the portion of the lands claimed by the defendant O. G. Parke. As to all the other defendants, the judgment will therefore be affirmed.

We are unable to determine definitely to what extent and what portions of his tract the defendant Parke may be able to hold under the three years statute of limitations; and in addition, the findings of fact are not sufficiently full and definite to enable us to settle the questions of rents and improvements between him and plaintiff. The judgment in favor of the defendant Parke will therefore be reversed, and, as to him alone, the cause remanded.

*Affirmed in part and reversed and remanded in part.*

### OPINION ON REHEARING.

Appellants and appellee have filed motions for rehearing of so much of the former judgment as is adverse to them, and appellants have also filed a motion requesting that judgment be rendered in their favor against appellee Parke for so much of the land as they would be entitled to recover under the decision herein rendered.

Appellees contend that the description in the deed from S. M. Heard

to O. G. Parke is either sufficient in itself, or that it might be made suf-ficient by parol evidence, and conclude by saying that "if the ambiguity in the deed can not be removed by testimony  *   *   *   there would seem to be no reason for a reversal of the case."

We do not think the defect in the record of the deed could be cured by parol evidence, and in this situation we understand that appellees would prefer that the case be not reversed.

Some question has arisen as to the extent to which appellants are enti-tled to recover against appellee Parke, said Parke having established title by limitation to an undivided half interest in the tract in question, and appellants having sued for an undivided half interest in the land, including said tract. The question has not been argued by counsel, but we have concluded that the recovery should be for an undivided half only of the portion to which Parke failed to establish title; that is, for an undivided one-fourth of the Parke tract, after deducting the portions which said Parke can hold under the three years statute of limitations.

On account of the absence of field notes from the record, and the gen-eral nature of the description contained in the findings of fact, we deem it best not to undertake to render judgment, and as the case must be remanded for a partition and adjustment of the questions of rents and improvements, we will modify our former judgment reversing and remanding the case as to the appellee O. G. Parke, and reverse and remand the case as to said defendant, with directions to the lower court to render judgment for appellants against said Parke for an undivided one-fourth interest in all the land in suit lying on the west and south-west side of the partition line established between Mrs. Emma Burleson on the one part and John T. Allen and D. C. Osborn on the other part, by deed dated 21st April, 1871, except so much thereof as is covered by the Martha E. Andrews 1280-acre survey, this direction being conclusive only upon the question of title, and not as to the rights of any of the parties concerning partition, rents or improvements.

The motions for rehearing will be overruled.

*Overruled.*

Writ of error refused.