GILBERT et al. v. T. B. ALLEN & CO. et al.
(No. 1804.)

Court of Civil Appeals of Texas. Beaumont.
March 28, 1929.

Rehearing Denied April 24, 1929.

C. A. Lord, of Beaumont, and Smith & Lanier, of Jasper, for appellants.

G. E. Richardson and Adams & Hamilton, all of Jasper, and Davis & Davis, of Center, for appellees.

WALKER, J. This was a trespass to try title suit by appellants against appellees, filed on the 25th day of April, 1927, involving, on the issues made by the pleadings, an undivided interest of 247½ acres of the north half of the Recindez survey in Jasper county, Tex. Appellees pleaded general demurrer and general denial, and specially, that they owned all the north half, holding the same under appellants. They also specially pleaded the several statutes of limitation to all the north half of the section. The evidence, in substance, was as follows:

The Recindez survey was patented as containing 640 acres, but, in fact, contained 1,135 acres. Prior to 1902 appellants, except Garland Smith and Lewis Lanier, owned all the north half of the survey in the following proportions: J. T. Beatty owning an undivided interest of 80 acres; appellants Baker and Lovett owning an undivided interest of 80 acres; and the other appellants, except Smith and Lanier, owning an undivided interest of 160 acres. At that time these appellants, in holding the title to the north half of the survey, believed that it, in fact, contained only 320 acres. In 1901 appellants made a lease to the north half to a man named Hamilton, who in 1902 assigned the lease to a man named Thompson. Thompson later assigned the lease to a man named Bean. Hamilton immediately after taking his lease inclosed the north half of the survey, together with other lands, under a legal fence. Through their tenants, Hamilton, Thompson, and Bean, appellants had open, notorious, and continuous possession of the land until they sold it to Nooner Collins in the first part of the year 1912. During all this time the fence had been maintained and the land continuously used by these tenants as a pasture. In selling the land to Nooner Collins, appellants conveyed it as follows: J. T. Beatty conveyed an undivided interest of 80 acres in the north half, appellants Baker and Lovett conveyed an undivided interest of 80 acres in the north half, and the other appellants, except Smith and Lanier, conveyed an undivided interest of 160 acres in the north half.

In making their conveyances to Collins, appellants believed they were conveying to him all the north half. The excess acreage at that time had not been discovered. Immediately upon the execution and delivery of the deeds, J. T. Beatty, for himself and representing the other appellants, notified their tenant, Bean, of the sale to Collins, and that they no longer had any interest in the north half of the survey, and that he would have to see Nooner Collins for the purpose of renewing his lease. Within a month after the execution and delivery of these deeds, Bean did see Collins, and Collins agreed and contracted with Bean to continue as his tenant on this land and hold the same for him. Bean's possession was never interrupted, but

under his contract with Collins, made at the suggestion and request of appellants, Bean attorned to Collins and held the land as Collins' tenant. Collins held the title in his own name only a short while and then conveyed to appellee T. B. Allen & Co., by a definite description, conveying to Allen, not an undivided interest in the north half, but all the north half of the survey. Prior to 1915, the excess acreage was discovered, and a lawsuit followed between T. B. Allen & Co., owning the north half, and Wm. Cameron & Co., owning the south half, of the survey. This was settled between these parties by agreement, wherein they fixed upon the ground the dividing line between the north half and the south half, and wherein, by definite field notes, T. B. Allen & Co. conveyed to Wm. Cameron & Co. the south half, and Wm. Cameron & Co. conveyed to T. B. Allen & Co. the north half. These conveyances recognized the dividing line as agreed upon. T. B. Allen & Co. continued holding the title to the land, and was so holding it when this suit was filed.

On March 3, 1925, T. B. Allen & Co. conveyed the timber on the land to appellee Jasper County Lumber Company. After contracting with Collins to hold the land as his tenant, Bean continued in possession, holding for Collins and T. B. Allen & Co., until the latter part of 1912 or first part of 1913, when he assigned his lease to R. B. Ellis. Ellis then, by satisfactory arrangement with T. B. Allen & Co., continued Bean's possession in his own right as tenant, maintaining the fence that had existed since 1901, using the land as a pasture for cattle until February 22, 1918, when he entered into a written lease with T. B. Allen & Co., whereby he acquired a lease upon the north half under the field notes set out in the petition between T. B. Allen & Co. and Wm. Cameron & Co. for five years. The possession of Ellis under this lease was continuous from its execution until Jasper County Lumber Company entered upon the land in the first part of 1926 to cut and remove the timber. All instruments of writing referred to herein were duly recorded, and no question is before us on that issue. T. B. Allen & Co., from the time it acquired the land, rendered the north half for taxes and regularly paid the taxes each year before they became delinquent. For the year 1920 it rendered 586 acres, intending thereby to render not only the 320 acres bought from appellants, but all of the north half. For the years 1921, 1922, 1923, and 1924 T. B. Allen & Co. rendered for taxes only 538 acres. This decrease in acreage was due to a mistake on the part of the agent in rendering the land. The agent, in fact, intended to render all of the acreage contained in the north half. The error was later discovered and the rendition increased to include the full acreage.

Appellants, after abandoning their claim in 1912, did not renew their claim to any of this land until shortly before this suit was filed. From 1912 they ceased to render the land for taxes and to pay taxes thereon. Shortly before the institution of the suit appellants conveyed to Smith and Lanier an undivided one-third interest in the land. Appellants concede to appellees 320 acres on the north one-half under their deeds to Nooner Collins, but insist that they have shown a record title to the excess acreage amounting to 247½ acres. The trial was to a jury, who, in answer to special issues, found that appellees had perfected a title under the five years' statute of limitation, and also under the ten years' statute of limitation. They found that the actual acreage inclosed under the fence erected in 1901 or 1902 was 564½ acres.

### Opinion.

■ As we understand appellants' propositions, they do not attack the sufficiency of the fence, nor the fact that the land was continuously and notoriously in possession of the tenants named supra, but they assail the verdict of the jury as being without support because of the legal construction given by them to the facts we have stated.

First, they say that the holding of Ellis was not adverse to them; that Ellis' holding was in privity with Bean, whose possession was under their lease to him, that neither Bean nor Ellis nor the appellees ever repudiated the possession given by them to Bean and by Bean transferred to Ellis, and that they had no notice of an adverse holding by appellees, and that the holding of Ellis was not sufficient to visit them with notice of an adverse holding. Appellants incorrectly construe the facts. Bean's tenancy under them was terminated by their agent, J. T. Beatty. From that moment Bean ceased to hold in privity with appellants, but became by express contract the tenant of Collins, who used Bean as his tenant with the knowledge and consent and on the invitation of appellants themselves. Ellis' holding for appellees was adverse to appellants.

■ Second, appellants say that appellees were tenants in common with them to the amount of the excess acreage, and as such could not mature a title by limitation against them. This proposition is not sound. Appellees never recognized a cotenancy with appellants, and at the inception of appellees' title appellants did not claim a cotenancy. The deed from Nooner Collins to T. B. Allen & Co. was absolute to all the north half. The partition deed between T. B. Allen & Co. and Wm. Cameron & Co. conveyed to T. B. Allen & Co. by specific metes and bounds all the north half. These deeds were duly recorded. The claim of appellees under these deeds and their possession through their tenant was exclusive of any right, claim, title, or inter-

est in appellants. Little v. Wagner (Tex. Civ. App.) 5 S.W.(2d) 232.

■ Third, appellants say that the pleadings of appellees on the issue of ten years' limitation were insufficient to support the trial court's judgment for the land in controversy. Appellee T. B. Allen & Co. pleaded this issue as follows:

"This defendant would further respectfully show to the court that they and those whose title it has and holds, and under whom it claims have had and held peaceable and adverse possession of the above described land and premises, cultivating and using and enjoying the same for a period of more than ten consecutive years before the institution of this suit, and after plantiff's cause of action, if any, accrued; wherefore, defendant T. B. Allen & Co. says that it has title to said land under and by virtue of the ten years' statute of limitation of the state of Texas, and this they are ready to verify."

Appellee Jasper County Lumber Company pleaded the issue as follows:

"And for further plea in this behalf comes the defendant Jasper County Lumber Company, and says the plaintiffs ought not to have and maintain their aforesaid cause of action against it because it says that, claiming to have good and perfect title and right to the land described in plaintiffs' petition, they have had and held peaceably the land claimed and adverse possession of the same, cultivating, using, and enjoying the same for a period of more than ten years after plaintiffs' cause of action accrued and before the commencement of this suit, and this it is ready to verify; and defendant specially pleads the ten years' statute of limitation in bar of any recovery by plaintiffs herein."

"And for further plea in this behalf comes the defendant Jasper County Lumber Company and says that the plaintiffs ought not to have and maintain their aforesaid cause of action against it because it says that it and those whose estate it has, now have and have had peaceable and adverse possession by an actual enclosure of the land and tenements mentioned in plaintiffs' petition, cultivating, using and enjoying the same for the period of ten years after plaintiffs' cause of action accrued and before the commencement of this suit and this it is ready to verify; and defendant here now interposes said facts and the statute of limitations of ten years in bar of any recovery by plaintiffs herein."

This pleading was not excepted to, nor was the evidence offered by appellees in support thereof objected to. Appellants objected to the submission of the issue of ten years' limitation on the ground that "defendants have not alleged a claim or possession under any memorandum of title other than a deed, and in that they have not alleged an actual inclosure of the north half of said survey, in any way that would entitle them to have the issue submitted, and in that the defendants have not pleaded the ten years' statute of limitation as to statutory 160 acres that would entitle them to any relief under an affirmative finding to the question." Appellees were not claiming limitation as to 160 acres, nor were they claiming an undivided interest by limitation. Appellees were claiming specifically the north one-half of the section. If the pleas of limitation were defective on the grounds assigned, they were subject to amendment. A plea that can be amended so as to set up a good cause of action is sufficient to support the judgment rendered thereon where the evidence was received without objection.

The jury found in favor of appellees on their theory of five years' limitation. The facts on this issue have been clearly stated above. Because appellant T. B. Allen & Co. during the five-year period relied upon failed to render and pay taxes on all the excess acreage, appellants assert that, as a matter of law, that issue was erroneously submitted to the jury, but the jury should have been instructed by the court to find it in their favor. Had appellees rendered only 320 acres it would be presumed that the payment of taxes was upon that portion of the land to which their title was undisputed. But appellees, in 1920, began their five-year period of limitation by rendering and paying taxes upon all the north half, rendering and paying upon all the acreage contained in the north half. That they did not pay taxes on all the acreage contained in the north half for the subsequent years was clearly occasioned by an oversight or mistake. The shortage in acreage rendered by them was so small as to be trivial. The facts of this case take it clearly out of the rule announced in Bassett v. Martin, 83 Tex. 339, 18 S. W. 587, but bring it, we think, within the rule announced in Henning v. Wren, 32 Tex. Civ. App. 538, 75 S. W. 905. Being absolutely satisfied that appellees have perfected a title under the ten years' statute of limitations, we do not pass upon the merits of appellants' propositions attacking the findings on the issue of five years' limitation. But this court is inclined to the conclusion that appellant's propositions are without merit.

■ The jury fixed the acreage, inclosed by fence, at 564½ acres. The north half contained, in fact, 567½ acres, leaving 3 acres not inclosed by fence. Appellants assert that the court should have rendered judgment for them for this three acres, and ask us to reverse the trial court's judgment, at least to this extent, and here render judgment for them for this 3 acres of land, and that appellees be taxed with the costs. It is our conclusion that appellees were correctly awarded judgment for all of the north half, not only for the 564½ acres inclosed by fence, but for the 3 acres that had been so inclosed.

Appellees were claiming the north half under deeds duly registered, describing it definitely and clearly. Their possession extended to all the land contained in their deed.

For the reasons stated, the judgment of the trial court is, in all things, affirmed.