## STARR v. DUNBAR et al.
### No. 4452.

Court of Civil Appeals of Texas. Texarkana. March 12, 1934.

Rehearing Denied March 22, 1934.

Edwin M. Fulton and C. E. Florence, both of Gilmer, for appellant.

W. Edward Lee, of Longview, and H. S. Garrett, of Fort Worth, for appellees.

JOHNSON, Chief Justice.

This suit was filed June 8, 1932, by appellant, El Starr, against appellees, T. J. Dunbar and the Texas Company, seeking to recover an undivided interest to the amount of 31.9 acres in a described 105-acre tract of land in Gregg county, and for partition. Appellees pleaded not guilty and the several statutes of limitation. The case was tried to the court without a jury. From a judgment in favor of defendants (appellees) and against the plaintiff (appellant), the plaintiff, El Starr, has perfected his appeal.

Plaintiff's claim of title to the land is based upon his right of inheritance through and from his deceased wife and deceased child of a one-ninth undivided interest in the estate of G. W. Dunbar, deceased, same being a one-eighteenth undivided interest in the community estate of G. W. Dunbar, deceased, and his surviving wife, M. A. Dunbar. G. W. Dunbar and wife, M. A. Dunbar, owned a community estate of 570 acres of land, located in Upshur and Gregg counties; the 105 acres in controversy located in Gregg county being a part of which that constituted their homestead, and on which they had resided since about 1866. G. W. Dunbar died intestate May 6, 1888. He was survived by his wife, M. A. Dunbar, and nine children, constituting his sole heirs. Ada Dunbar, daughter of G. W. and M. A. Dunbar, was married to El Starr, one child was born unto this union, and the mother, Ada Starr, died intestate in 1894; the child died within a few weeks after the death of its mother, thus vesting in

El **Starr** a one-ninth undivided interest in the estate of G. W. Dunbar, deceased. On August 18, 1899, the eight surviving Dunbar children, all of whom appear to have been of age or married, met at the old home place for the purpose of partitioning the land. The 570 acres, except 160 acres of the homestead on which the mother, M. A. Dunbar, lived, was divided into eight tracts or parts and each numbered. Corresponding numbers were placed in a hat and each of the eight children drew therefrom. Mrs. M. A. Dunbar, joined by the other children, executed to each of the eight children deeds to the respective tracts so drawn. E. L. Dunbar, a son, testified: "We met at Mother's to divide up this land. She said she was willing to divide up this land and we just left her a homestead of 150 acres or 160 acres. Well, we just numbered each tract of land, began numbering from one up to number eight, and put these numbers in a hat and each one drew out a number and that number stated what tract of land you got."

El Starr was present on this occasion, and knew about the drawing, but it does not appear that he was consulted or that he took any part in the division. The eight children placed their deeds of record and went into possession of their respective tracts; and they, or their grantees, have continuously since remained in peaceable and adverse possession thereof. No conveyance was executed to the 160 acres of the homestead left to Mrs. M. A. Dunbar, but she subsequently sold off 45 acres and 10 acres, and continued to occupy the remaining 105 acres as her homestead, and claimed title to it until she sold it to T. J. Dunbar shortly prior to her death in 1925. On November 18, 1925, Mrs. M. A. Dunbar Baker, joined by W. H. Baker, who was her husband at that time, by general warranty deed conveyed the 105 acres to appellee, T. J. Dunbar. The deed was duly recorded on November 19, 1925. On May 21, 1926, the heirs of G. W. Dunbar, deceased, executed a quitclaim deed to the 105 acres to T. J. Dunbar. El Starr did not join in these deeds. On July 18, 1928, T. J. Dunbar executed an oil and gas lease on the 105 acres to John W. Easterwood, which mineral interest is now held by the Texas Company.

▮▮ That El Starr is entitled to recover an undivided interest amounting to 31⅔ acres out of the 105 acres is not controverted, unless he is barred from so doing by one or both of appellees' pleas of five and ten year statutes of limitation (Rev. St. 1925, arts. 5509, 5510).

As to their plea of ten-year limitation, it is the contention of appellees: "Title by limitation ripened in M. A. Dunbar, a cotenant with El Starr, because notice of the hostile claim of M. A. Dunbar the tenant in possession, against the cotenant out of possession, El Starr, was given in 1899 by partitioning the land and placing the respective parties in possession thereof in the presence of appellant and the statutes of limitation began running from the time of such notice."

It is not thought that appellees' contention can be sustained, for the reason that, as to the 105 acres which she continued to occupy as her homestead, the relation of cotenancy did not exist between Mrs. M. A. Dunbar, the surviving widow, and El Starr, for want of right of possession in El Starr. Unity in right of possession is an essential element of tenancy in common. 11 C. J. §§ 2 and 3, p. 410, § 12, p. 419; 62 C. J. §§ 1 and 2, p. 408. It is testified that she claimed title to the homestead after it was "left" to her at the time of the division of the remainder of the land among the eight surviving children in 1899, but it does not appear that she at any time abandoned or relinquished her homestead rights in and to the 105 acres. It was a part of the homestead on which she and her husband lived at the time of his death. She continued to use and occupy it as her homestead until she sold it to appellee, T. J. Dunbar, in 1925. At no time during this period, because of her homestead rights, could El Starr have maintained a suit for partition and possession of any part of the 105 acres against Mrs. M. A. Dunbar. Articles 3496, 3497, 3498, R. S. 1925. Therefore, as to the 105 acres, El Starr possessed no "right of action for the recovery of land" against which limitation could run. Article 5510, R. S.; Perkins v. Perkins (Tex. Civ. App.) 166 S. W. 915, 917; McAnulty v. Ellison (Tex. Civ. App.) 71 S. W. 670; Crump v. Andress (Tex. Civ. App.) 265 S. W. 1074. In Perkins v. Perkins, supra, it is said:

"If it be conceded that the evidence was sufficient to sustain a finding that defendant's (surviving widow) claim of ownership of all of the property was known to plaintiff (heir) for more than ten years before the suit was brought, that such claim was continuous during all of said time, and that defendant's possession was continuous during said ten years, no title by limitation could be acquired by her because her possession of the property as a homestead being lawful was not adverse to plaintiff. The defendant's claim of ownership of the whole of the property did not affect her right to its use and occu-

pancy as a homestead, and plaintiff could not because of such claim recover possession of any part thereof. This being true, his title would not be lost by his failure to sue within ten years after he received notice of defendant's claim.

"The case is not like that of a tenant in common who repudiates the title of his co-tenant. In such case the tenant in possession has no right to the possession of the whole of the premises as against his cotenant, and, when he repudiates the rights of his cotenant and takes possession of the whole, the cotenant can sue and recover possession of that portion of the property owned by him.

"Plaintiff having no right of possession in this case, he was not required to bring suit in order to prevent defendant's claim ripening into a title. There can be no difference in principle, so far as limitation is concerned, between the possession of one holding under a homestead right and the possession of a life tenant, and it is well settled that limitation will not run against a remainderman in favor of the life tenant, or one claiming under him during the life of such tenant."

■ Concerning appellees' plea of title under the statute of five-year limitation (Rev. St. 1925, art. 5509), it appears that El Starr had actual as well as constructive notice of appellees' adverse claim under the deed from Mrs. M. A. Dunbar Baker to T. J. Dunbar, and that appellees have fulfilled all the requirements to prescribe under this statute except the requirement with respect to the payment of taxes. Appellee T. J. Dunbar's tax receipts show that he paid taxes on 70 acres, only, of the 105-acre tract described and designated in his deed. T. J. Dunbar's explanation as to why he assessed and paid taxes on only 70 acres of the 105 acres was because he thought that was all there was in the tract. It appears, though, that his purchase was of 105 acres, and his deed calls for 105 acres, more or less. He described it in the lease he executed to the Texas Company in 1928 as being 105 acres correctly described in his deed from his mother by reference to the volume and page of the record thereof. In Henning v. Wren, 32 Tex. Civ. App. 538, 75 S. W. 905, 910 (writ of error refused 97 Tex. 636), it is said: "It is insisted, because there was evidence tending to show that the lands held by defendants actually contained a larger number of acres than rendered by them, that this would defeat the operation of the statute, at least as to the excess. The court found that the defendants rendered as many acres as their deeds called for, and as many acres as they thought they had. We do not hold that such a disparity might not exist between the quantity of land held in possession and that rendered for taxes as to prevent the statute from running, nor do we hold that the number of acres called for in the deed is conclusive; but we do not believe, where a grantee in a recorded deed pays on the number of acres called for in his conveyance, actually believing that he is paying for the full quantity in his possession, that he should be deprived of the benefit of the statute, because it may subsequently be ascertained that his tract is somewhat larger than he believed it to be."

We are of the opinion, in the circumstances of the case before us, that the proportionate difference is too great to hold that the payment of taxes on only 70 acres was a sufficient, substantial compliance with the requisite of the statute in this respect to ripen title under the five-year statute of limitation in T. J. Dunbar to the 105 acres claimed and called for in his deed. Hoencke v. Lomax, 102 Tex. 487, 119 S. W. 842, in which case Judge Williams, speaking for the Supreme Court, said: "We do not think, however, that a claim of title under the 5-year statute can be maintained where for some of the years making up that period taxes were paid on some undefined part of the land claimed under the deed."

For the reasons above stated, we are of the opinion that the appellees have not by any of the statutes of limitation acquired the interest of El Starr in the land. Accordingly, the judgment of the trial court is reversed and judgment is here rendered in favor of appellant, El Starr, and against appellee T. J. Dunbar and the Texas Company for title to an undivided interest to the amount of $31\frac{2}{3}$ acres in the 105 acres in controversy described in plaintiff's petition. The trial court will proceed to partition the land described above in accordance with the directions contained in this judgment and with the provisions of the law having relation thereto. The cost of this appeal is adjudged against appellees.