PINCHBACK et al. v. HOCKLESS et al.

No. 3498.

Court of Civil Appeals of Texas. Beaumont.

Jan. 12, 1940.

Rehearing Denied Feb. 28, 1940.

Nelson Jones, of Houston, and Orgain, Carroll & Bell, of Beaumont, for appellants.

D. L. Broadus and Renfro & Keen, all of Beaumont, for appellees.

COMBS, Justice.

This is a land suit involving title to 5 acres, part of a 10 acre tract referred to in the evidence as the Bright Tract, out of a 100 acre tract conveyed by G. W. Tevis and wife to Randolph W. Tevis, part of the C. Williams league in Jefferson County. The land is located near the Amelia oil field and appears to have considerable value. Appellees, who were plaintiffs in the court below, claim record title to the land sued for and, for reasons which we shall discuss briefly later, we think they established their record title. On the trial, appellants claimed title by the statutes of adverse possession and limitation of 5, 10 and 25 years, Vernon's Ann.Civ.St. arts. 5509, 5510, 5519. We will refer to the parties as plaintiffs and defendants, as denominated in the trial court. At the conclusion of the evidence, the defendants moved for an instructed verdict which was overruled. The case was submitted to the jury on the following special issues, answered as indicated:

Special Issue No. 1:

"Do you find from a preponderance of the evidence that the defendants, R. T. Pinchback and wife or either of them, re-

pudiated the title of plaintiffs and those under whom they hold at any time between December 12, 1911 and August 20, 1927?

"If you so find from the preponderance of the evidence, answer, 'They did,' but if you do not so find from the preponderance of the evidence, answer 'They did not.'"

To this issue the jury answered "They did not."

Special Issue No. 2:

"Do you find from a preponderance of the evidence that the defendants, R. T. Pinchback and wife, either in person or through a tenant or tenants have held peaceable and adverse possession of the land in controversy, cultivating, using and enjoying the same for any period of ten consecutive years after December 12, 1911, and before August 20, 1937?

"If you so find from the preponderance of the evidence, you will answer 'They have,' but if you do not so find from a preponderance of the evidence, answer, 'They have not.'"

To which the jury answered "they have not."

Special Issue No. 3:

"Do you find from a preponderance of the evidence that the defendants, R. T. Pinchback and wife, or those under whom they claim, either in person or through a tenant or tenants, have held peaceable and adverse possession of the land in controversy, cultivating, using and enjoying the same for any period of ten consecutive years prior to December 12, 1911?"

To which the jury answered "They have not."

Special Issue No. 5:

"Do you find from a preponderance of the evidence that the tract of land in controversy in this suit was entirely surrounded by a tract or tracts of land owned, claimed or fenced by the defendants, R. T. Pinchback and wife, from 1911 to the present time?"

To which the jury answered "Yes."

Special Issue No. 7:

"Do you find from the preponderance of the evidence that the defendants, R. T. Pinchback and wife, either in person or through a tenant or tenants, or those under whom they claim, either in person or through a tenant or tenants, have held peaceable and adverse possession of the land in controversy, cultivating, using and enjoying the same, for any period of ten consecutive years, after December 12, 1901, and before December 12, 1921?"

To which the jury answered "they did not."

No issues relative to the five year statute and the 25 year statute were submitted, although requested. On the verdict of the jury, the trial court entered judgment for the plaintiffs for title and possession of the land. We will set out the pertinent facts relative to the limitation issues in connection with our discussion of the appellant's assignments.

Opinion.

In the outset we overrule the defendants' contention that plaintiffs did not sufficiently establish their record title. The 10 acre Bright Tract, 5 acres of which is here involved, was conveyed by Randolph W. Tevis and wife to G. W. Spence, by deed dated December 19, 1877. Plaintiffs claimed under that deed and it was not introduced in evidence. It appears to have been lost without ever having been recorded. However, Randolph W. Tevis and wife conveyed the remaining 90 acres of the 100 acre tract to Richard L. Adcock by deed dated November 13, 1878, and in that deed they recited that it was all of the 100 acre tract "less 10 acres thereof, more or less, which has been heretofore conveyed by said R. W. Tevis and wife to G. W. Spence which is not hereby conveyed. The land hereby conveyed is 90 acres more or less the remainder of the 100 acre tract conveyed by G. W. Tevis and wife as aforesaid which 100 acre tract is surveyed and described as follows, to-wit:" (then follows the description). And by deed dated July 19, 1880, G. W. Spence conveyed to Jack Bright, ancestor of appellants, the 10 acres here involved by specific metes and bounds, and in that deed recited "the said 10 acres of land being the same that was conveyed to me by R. W. Tevis and wife on the 19th day of December, A. D. 1877." These recitals appearing in the instruments of conveyance under which all parties to this suit claim constitute muniments of title binding on all the parties sufficiently establishing the conveyance in question. Kimbro v. Hamilton, 28 Tex. 560; Willis v. Smith, 72 Tex. 565, 573, 10 S.W. 683; Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743.

We will next consider defendants' contention that the trial court should have granted their motion for an instructed verdict because, as they contend, they estab-

lished their title by limitation under the five year statute, Vernon's Ann.Civ.St. Art. 5509, as a matter of law. As we view the record, the evidence did not raise any issue of adverse possession and limitation under the five year statute for two reasons: (1) The land in controversy was not included within the recorded muniments of title under which the defendants and their predecessors in interest claimed title, and (2) there was no proof of the payment of taxes on the land involved. We will discuss these matters in order.

■ Randolph W. Tevis and wife were common grantors in the chains of title under which both the plaintiffs and defendants claimed. Tevis and wife, the then owners of a specific 100 acres, conveyed 10 acres of it to G. W. Spence from whom the plaintiffs deraign their title thereto, and shortly afterwards Tevis and wife conveyed the remaining 90 acres to Richard L. Adcock, from whom defendants deraign their title. One deed in the chain of title from Adcock to the defendants was not introduced in evidence, but it was fully established by recitals in the instruments which were introduced as in the case of the Spence deed above referred to. In their deed to Adcock, the Tevises specifically excepted the 10 acres conveyed to Spence, and, as shown by the recital hereinabove quoted, purported to convey only the 90 acres which remained of their 100 acre tract. True, subsequent conveyances, including the deed from J. W. Hall to P. H. Cunningham, dated June 26, 1890, under which the defendants claimed their limitation, did not except from the description the 10 acre Spence (later the Bright) Tract but described the 100 acres by metes and bounds. However, that deed contained the recital following the metes and bounds description " * * * containing 90 acres more or less and being the same 90 acres more or less—by R. L. Adcock and wife to W. F. Watkins and by said Watkins and wife to W. H. H. B. Baker to which deed reference is made." In 1911, in a friendly partition suit in the district court of Jefferson County, the estate of P. H. Cunningham and wife was partitioned among the heirs and by virtue of that partition the 90 acre Watkins Tract was set aside to the defendants. The report of the Commissioner of Partition and the judgment of the court show that the Bright 10 acres here involved was not considered a part of the Cunningham land. The land was surveyed on the ground by G.

W. White, a surveyor, and one of the Commissioners of Partition, who excluded the Bright 10 acres by metes and bounds and showed it on the plat which he filed with the designation "Bright Tract." Thus, the record as a whole, including the interpretation placed upon their muniments of title by the defendants themselves, negative the construction that the deed from J. W. Hall to P. H. Cunningham was intended to include the Bright 10 acres. For although that deed did include within the metes and bounds description the entire 100 acre tract, it should be borne in mind that the origin of the defendants' title from the common grantor was by the deed from Tevis to Adcock, which not only purported to convey only 90 acres but specifically excluded the 10 acre Bright Tract. Subsequent deeds in the chain merely omit the clause making reference to the conveyance by R. W. Tevis to G. W. Spence, and excepting that 10 acres. Otherwise the description is the same with no apparent intent to enlarge the acreage of the grant beyond the 90 acres conveyed by the prior deeds. Under the authorities above cited the recital in the deed from the Tevises to Adcock under which appellants claim specifically excluding the Bright 10 acres, must be read into the deed from Hall to Cunningham. It is as binding upon appellants as it would have been had it been incorporated in the description.

■ It is true that as a general rule a particular metes and bounds description will control over a general description. Yet in construing a deed the real intent of the grantor must be gathered from the whole description, including the general as well as the particular. This principle is fully recognized in the case of Cullers v. Platt, 81 Tex. 258–264, 16 S.W. 1003, and Sanger v. Roberts, 92 Tex. 312, 48 S.W. 1, cited by the defendants in their brief. Here we think the defendants' claim of title is limited, by their muniments and by the interpretation which they and their predecessors in interest have placed upon them, to the 90 acres conveyed by Randolph W. Tevis and wife to Richard L. Adcock.

■ As to the payment of taxes, the defendants showed that they, and those under whom they claim, rendered and paid taxes before delinquent on 416 acres of the C. Williams league from 1895 to 1908, inclusive. But on the record that was no proof of payment of taxes on the land here involved. The record affirmatively shows that the Cunninghams owned and claimed

title to other lands on the C. Williams league. They had acquired 123 acres from J. D. McLean, 126 acres from R. L. Adcock, 100 acres from Ellen R. Collier, and 90 acres from J. W. Hall, making 439 acres in all. And in 1893 Cunningham conveyed 23 acres to Paul Gau, leaving 416 acres owned and claimed by the Cunninghams on the C. Williams league, exclusive of the Bright Tract—the exact acreage which they paid taxes on. The rendition and payment of taxes was by acreage only. There was no separate or distinct rendition or payment of taxes on the Bright 10 acres, or on any particular 10 acres of the C. Williams league. The Bright Tract had long been a segregated and distinct tract. The burden of proof was on defendants to establish every essential fact entitling them to recover, including definite proof that the taxes were seasonably paid on the very land involved. This they did not do. It cannot be inferred from the mere fact that they paid taxes on 416 acres of the C. Williams league that the Cunninghams meant to include and pay taxes on the Bright 10 acres. Furthermore, the record tends rather to refute any inference that they did so intend. In the first place, presumption naturally would be that they meant to pay taxes, and did pay taxes on their own land since they did not render any excess acreage. And it is also shown that the plaintiffs and their predecessors in interest have rendered and paid the taxes on the Bright 10 acre tract from about 1890 to the filing of this suit in 1936. And there is no showing that there was any double payment of taxes on the Bright lands. Consequently, we think the evidence wholly failed to raise an issue that taxes were paid by the defendants on the land in controversy as required to support their plea of the statute of 5 year limitation. This holding in no wise conflicts with the decisions cited by defendant to the effect that payment of taxes on actual acreage called for in the deed will support limitation to excess acreage included in the metes and bounds described. Starkey v. McNay, Tex.Civ.App., 103 S.W.2d 1051, 1052; Henning v. Wren, 32 Tex.Civ.App. 538, 75 S.W. 905. In that class of cases there was definite evidence on the tax records of payment of taxes on the very tract sued for, and the mere fact that the acreage was incorrectly given cast no doubt on the question of what land the claimant was paying taxes on.

With respect to recognition of plaintiffs' title by Mrs. Cunningham from 1904 to 1908, when George Blanch cultivated 6 acres of the land, and, at Mrs. Cunningham's direction paid the rent to an agent of the plaintiffs, defendants contend first that their title by limitation under the 5 year statute was already complete, and such recognition could not destroy their title thus already vested, and, second, that since Mrs. Cunningham, widow of P. H. Cunningham, deceased, owned only a half interest the remainder being vested in the heirs of P. H. Cunningham, her act of recognition could not in any case affect the title of the heirs to their one-half.

■ It is true, as contended by appellants, that a title once acquired by limitation can no more be lost by abandonment or by recognition that the title is in another, than can a title to land acquired by valid conveyance. But it is also true in a land suit involving the issue of adverse possession and limitation, that when the evidence shows that one whose possession is relied on to establish limitation, has by word or act recognized the title of the record owner, at any time while in possession, such fact may be considered as evidence that the possession was not adverse. The second point overlooks the vital fact that P. H. Cunningham died in 1893, only three years after the possession began, and the defendants rely from that time on the possession of Mrs. Cunningham to mature their title by limitation. And certainly an act or admission of Mrs. Cunningham bearing upon the question of the nature of her possession was binding on all who claim under her possession.

■ The statute which permits one man to acquire the land of another with no other claim of right than to adversely occupy it and pay the taxes on it under a recorded muniment of title for five years is harsh enough when strictly construed. And justice demands proof clear and unequivocal that each essential element of the statute has been complied with in order to support a judgment which divests the title of one who owned the land and vests it in another who has no other right or claim than limitation.

■ On the several issues of 10 year limitation, we think the evidence was ample to support the jury's findings against the defendants on those issues. True, the defendants offered evidence that P. H. Cunningham fenced his lands on the C. Williams league in 1890, immediately after he

got his deed from J. W. Hall, and included within the fence, along with lands belonging to another party, the 10 acre Bright Tract, and that the Bright Tract has been included within the Cunningham enclosures ever since. And although there was some conflict as to whether the fences have been kept up, the evidence was ample to support a finding that the Pinchbacks and Cunninghams have held continuous possession. But there was testimony to the effect that Jack Bright lived on his 10 acres from along in the 1880's until about 1899, and also testimony raising the issues of nonclaim and recognition of the Bright title by Mrs. Cunningham. As to Jack Bright living on the 10 acres, Minnie Hockless testified he was living there when she was 3 or 4 years old. She was 58 at the time of the trial in 1938, which would place him there as early as 1884. She said he continued to live there until about 1899. The witness Sam White testified that he first saw Jack Bright living on that 10 acres about 1888. The witness Jake Douglas testified Jack Bright was living there about 1888 and that he continued to live there a long time—just how long the witness did not know. The witness George Blanch testified that he farmed a part of the 10 acres in rice in 1904 to 1907 and that an old well and other evidences of a former residence on the land were clearly visible. As to nonclaim and recognition George Blanch, a disinterested witness, testified that beginning in 1904 he leased the Cunningham lands for rice farming and in connection with that lease cultivated 6 acres of the Bright 10 acre tract from 1904 to 1908, inclusive; that shortly after he began cultivating it Mr. Charles Daniels came to him, purporting to represent certain negroes (the plaintiffs are negroes), who owned the Bright 10 acres, and demanded that the rent be paid to the negroes; that he took the matter up with Mrs. Cunningham, who was then living, and she told him that the negroes owned the land in question and to go ahead and pay them the rent on it, and that he thereafter paid to Mr. Daniels, for the negroes, $18, that being $3 per acre for the 6 acres cultivated each and every year that he farmed the rice on the Bright tract. He testified further that one Charpiot, who the record shows owned a one-fourth undivided interest with Cunningham in the Watkins 90 acres, also told him that the land belonged to the negroes. In addition, as we have said above, in the partition of the Cunningham estate in 1911 the Bright 10 acre tract was specifically excluded, with the acquiescence of all parties, from the partition of the Cunningham lands. We say with the acquiescence of all parties for the reason that a consent decree of partition of the Cunningham estate lands was entered, which decree excluded the Bright 10 acres as not belonging to the Cunningham lands and the field notes of the Watkins 90 acres awarded the Pinchbacks by that decree called for two lines of the Bright 10 acres as adjoinders, referring to it as the "Bright" tract. It was so designated on the plat prepared by the commissioners of partition and upon which the decree was based. That evidence was sufficient to support the jury's finding of no limitation prior to 1911. As to the second period inquired about, the defendants offered evidence that beginning with the partition in 1911 they have continuously claimed ownership of the land in question. Mr. Pinchback testified that he was with surveyor White when he surveyed around and excluded the Bright tract and asked White why he did so and that White told him the title was not clear and to include it might cause litigation but that they (the Cunninghams) had as good title as anyone else. He stated the other heirs agreed for him to claim the Bright 10 acres and that he did so from then on. However, there was testimony offered that Mr. Pinchback attempted to buy the negroes' interest in 1925 and 1926 and told them he did not claim the land. Mr. Pinchback did not render or pay taxes on said 10 acres until 1934, about two years before this suit was filed, when he increased his rendition by adding the 10 acres. The appellees and their predecessors in interest rendered and paid taxes on it continuously from 1890 to the filing of this suit. In the meantime another partition suit was had involving a part of the Cunningham lands wherein the C. J. Charpiot Tract was ordered sold as not being capable of partition. Appellants were parties to that suit and appellant R. T. Pinchback was appointed as commissioner to sell the Charpiot 22⁵⁄₁₀ acre tract which by the prior partition adjoined the Bright Tract. He made sale of it and by deed to the purchaser, J. B. Charpiot, dated March 12, 1931, and executed by him as such commissioner, reference was made to the Bright Tract, the adjoinder being called for in the words "Thence E. 1142 ft., an iron stake for Cor. in W. line of Jack Bright's 10 acre tract * * * thence along Jack Bright's N. line 543 ft." etc. It was also shown that during the years 1934 and 1935, the Pinchbacks made affidavits for certain

Other persons whose lands had been held by them in that vicinity but not under the same fence, to the effect that they had never claimed such tracts.

We have summarized the testimony tending to deny defendants' claim of limitation title and to support the jury's findings against them thereon in deference to appellants' insistence that the evidence was not sufficient to support the findings against them. The defendants of course offered considerable evidence in support of their issues of limitation, but certainly the testimony to which we have referred clearly raised the issues. The testimony with respect to nonclaim and recognition of the plaintiffs' title by the defendants and those under whom they claim if believed by the jury was sufficient of itself to completely destroy the adverse character of the defendants' possession however long it may have continued.

We will notice briefly one other contention, which is that the defendants established title, or at least raised an issue of fact under the statute of limitations of 25 years. We think that on the record the issue was not raised. From the time the possession is alleged to have begun in 1890 down to the time of the partition of the Cunningham estate in 1911, the period was less than 25 years. And even if we should be in error in our holding that the muniments of title under which the defendants claimed prior to that time did not include the land in controversy, nevertheless it cannot be questioned that the defendants' muniments of title did not include it after the partition decree of 1911. That decree, as we have pointed out, specifically excluded the Bright 10 acre tract. And since the defendants deraign their title from that decree it cannot be successfully contended that any issue of limitation under the 25 year statute was raised.

The defendants have urged several assignments complaining of the court's charge, particularly as to certain definitions of terms. We have carefully considered all of the assignments and conclude that no reversible error is shown. In view of the great length of this opinion, we do not discuss the other assignments but simply overrule them. We believe we have discussed the matters chiefly relied on by the appellants for reversal.

Finding no error, the judgment of the trial court is affirmed.

We have withdrawn the original opinion and rewritten it in order to clarify certain fact statements. However, we have not changed any holding and it will not be necessary of course for appellants to file any motion for rehearing against this opinion.